SAM CROSSNO v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS,. a Corporation, Appellant.—62 S. W. (2d) 1092.

Division One, August 24, 1933.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for appellant.

*Louis E. Miller* and *John F. Gibbons* for respondent.

FRANK, P. J.—Action by respondent, plaintiff below, to recover damages for alleged personal injuries. Plaintiff recovered judgment and defendant appealed.

This case is here on a second appeal. At the first trial plaintiff recovered judgment, and on appeal to this court that judgment was reversed and the cause remanded for error in refusing to give certain withdrawal instructions requested by defendant. The opinion in the former case is reported in 328 Mo. 826, 41 S. W. (2d) 796, to which we refer for a full statement of the facts. We will, however, state facts sufficient to an understanding of the points discussed.

Plaintiff was in the employ of defendant, Terminal Railroad Association of St. Louis, as a switchman. He was injured in the Chicago, Burlington and Quincy Railroad yards, known in the record as the "Q" yards. On February 5, 1927, at about eleven o'clock P. M., the plaintiff was struck and injured by a string of cars which the defendant was backing through the "Q" yards. These yards are located in East St. Louis, Illinois. Front Street is a public thoroughfare of East St. Louis, running in a general north and south direction. The street is occupied by a number of railroad tracks and is also used for ordinary traffic. The "Q" yards are located along the east side of Front Street. The tracks in this yard run in a general east and west direction. Plaintiff was injured in the "Q" yard some distance east of Front Street. The track on which plaintiff was injured is referred to in the record as the "Q connection." This track extends north and south on Front Street some distance north of the "Q" depot where it makes a broad curve to the east and enters the "Q" yard from the west and runs east and west through the yards. There was a well-defined and much-used footpath north of and parallel to this track.

At the date of plaintiff's injuries, he was employed by defendant as a switchman in Wiggins No. 2 yard, working on a night shift which went on duty at eleven o'clock P. M. He was required to report for work at the yard office. This switch yard was located at or near the north end of Front Street. Plaintiff's evidence is to the effect that on the night of February 5, 1927, he left his home in East St. Louis to report for work, and that he walked west along the path on the north side of the "Q connection track," and, when he was yet some considerable distance east of Front Street, he crossed the

"Q connection track" to the south and into a small depression for the purpose of answering a call of nature. After answering the call of nature, he returned northward intending to recross the track and resume his westward course along the path. As he neared the track, and before attempting to cross it, he looked to the east and to the west. The night was dark and he neither saw nor heard the approaching train. After thus looking he continued across the track and was struck by the train and injured.

It is defendant's contention that plaintiff was injured at a place where the operatives of the train were entitled to expect a clear track, and for that reason they were not required to be on the lookout for persons on the track, and therefore owed plaintiff no duty in that respect. On the other hand, plaintiff contends (1) that the use of the yards by defendant's employees and the employees of other railroads in that vicinity in going to and returning from their places of work was sufficiently habitual and continuous that defendant had no right to expect a clear track, and owed the duty to be on the lookout for persons on or near the track, and (2) that it was the custom and practice when backing a string of cars through the yards in the nighttime to have a man with a light stationed on the first or leading car to protect the property of defendant and the life and limb of persons who might be on or near the track, and that plaintiff knew of and relied upon such custom at the times in question.

Each party contends that the evidence supports their respective contentions.

It is fundamental law that a railroad's right to the use of its yards and tracks therein is paramount and exclusive, and for that reason they are presumably entitled to a clear track. However, the right to a clear track may be waived where evidence of user of the track by pedestrians is such that it tends to show that the railroad knew of and acquiesced therein. [Fry v. Railroad, 200 Mo. 377, 399, 98 S. W. 566.] So the question in this case is whether or not there was evidence tending to show user of the tracks by the employees of defendant and by the employees of other railroads in going to and returning from their place of work, sufficiently substantial in character, that a court could say that it tended to show that defendant knew of and acquiesced in such use of the tracks. If so, the evidence tended to show that defendant had no right to expect a clear track, and was under the duty to be on the lookout for persons on or dangerously near the track. If not, otherwise.

There was no evidence that any employee of defendant, or of any other railroad ever used a track in the yard as a footpath in going to or returning from work. It is true that plaintiff's evidence was to the effect that the employees used the yard, that is they walked through the yard in going to and returning from their work.

but the evidence does not show whether they walked on a track, or on a path between the tracks or on a path where there were no tracks.

The only definite information on that subject is the testimony of plaintiff himself. His evidence is to the effect that he was going through the yards on his way to report to the yard office for work; that he was traveling his usual route in a well-beaten path to the north of and parallel with the track on which he was injured; that during his course, he left the path and crossed the track to answer a call of nature; that he attempted to recross the track to the path and was struck by the train and injured. There is no evidence that any employee of defendant or any employee of any other railroad in that vicinity ever used a track as a footpath or ever crossed a track while walking through the yard in going to and returning from their place of work. No contention is made that the yard or tracks were used by the public.

Although the employees of defendant as well as the employees of other railroads in that vicinity habitually crossed the yards in going to and from their place of work, if they did not use the tracks in so doing, the law would not require defendant to expect that they might be on the track, or be on the lookout for them. Otherwise stated, the use must be confined to the limits proved. Speaking to a like question in Fry v. Railroad, 200 Mo. 377, 401, 98 S. W. 566, we said:

"Did plaintiff bring himself within the doctrine of the rule announced in paragraph two of this opinion? That is, was the place he was struck a place defendant was entitled to a clear track but had no right to expect one? To bring a case within that rule, the use established in the public may be likened somewhat to that giving rise to a prescriptive right, i. e., the use must be a known use, and *must be confined to the limits proved.*" (Italics ours.)

A like question was before this court in Hufft v. Railroad, 222 Mo. 286, 295, 121 S. W. 120. There the plaintiff, in company with another boy, was crossing the switch yards of defendant in the city of Lebanon, Missouri, about nine o'clock P. M. He caught his foot in the frog of a switch, and being unable to extricate himself, a backing train, then switching in the yards, struck and injured him. The plaintiff in that case attempted to show user of the tracks in the yards. Of that evidence the opinion states that: "Plaintiff offered several witnesses, the purpose of whose testimony was to show continuous user by pedestrians of the railroad track as a passageway or footpath. This testimony tends to show that there was considerable travel at different points for a considerable distance, but the evidence is not very definite as to any particular pathway, nor does it disclose clearly whether or not the place where plaintiff was injured was at or about the alleged pathway claimed to have been used by the public." Commenting on the sufficiency of that evidence to

show user of the tracks, we there said, "We are not at all satisfied with the evidence upon the question of user. It is not definite enough in the present record to determine the portion of the track to which the user attaches, if to any."

The same thing may be said in the case at bar. While there was abundant evidence tending to show that the employees of defendant as well as the employees of other railroads walked across the yard in going to and returning from their places of work, no witness testified that they walked upon or across the tracks while crossing the yard. Otherwise stated, no witness except plaintiff, attempted to locate the portion of the yard used by employees in going to and returning from their places of work. Plaintiff testified that his route was along the path located north of and parallel with the "Q connection track." Evidence that employees habitually walked across the yards does not tend to prove they walked upon or across the tracks in so doing, and for that reason defendant owed plaintiff no duty to be on the lookout for him, or to warn him of the approach of the train. Plaintiff having failed to make a prima facie case upon the question of user, defendant's demurrer to the evidence should have been sustained.

    Plaintiff, however, contends that the holding of this court on the former appeal that plaintiff made a case for the jury is the law of the case and must be followed on this appeal. The law governing this contention was clearly and tersely stated by this court in Davidson v. St. Louis-San Francisco Ry. Co., 256 S. W. 169, 301 Mo. 79, 85, as follows:

"It suffices to say that such opinion is the law of the case, unless the pleadings have been amended so as to introduce new issues, or the evidence on the retrial is substantially different, from the evidence considered upon the vital questions at the former hearing here. It should be further stated, however, that even if there is no substantial difference in pleadings and proof upon the retrial, yet if this court upon second appeal finds that it was in error upon the first hearing, it not only has the power and right to correct such error, but it would be the duty of the court so to do, in the interest of justice. This is true whether we erred in principles of law declared, or erred in the determination of what were the real facts of the case."

The opinion on the former appeal of this case does state that the uncontradicted evidence showed that the employees of defendant as well as the employees of other railroads in that vicinity went through the "Q" yard and upon and across the tracks there in going to and from their places of work. However, the sufficiency of the evidence to show user of the tracks was not questioned by defendant on the former appeal. The only point made at that time against the sufficiency of the evidence was that plaintiff was guilty of contributory

740

negligence as a matter of law. In view of the fact that the sufficiency of the evidence to show user of the track was not challenged, evidently the writer of the former opinion took the statement of witnesses that the employees crossed over and through the "Q" yard as meaning that they went upon and over the tracks while crossing the yards. The sufficiency of the evidence on the question of user of the track is seriously challenged on the present appeal. We have carefully examined the abstract of record in both appeals and do not find in either record any evidence that the employees of defendant or the employees of other railroads in that vicinity ever went upon and over the tracks while crossing the yard in going to and returning from their places of work. For these reasons, the holding in the former opinion that plaintiff made a case for the jury, is not controlling on this appeal.

'Our holding that defendant's demurrer to the evidence should have been sustained, obviates the necessity of discussing other questions raised.

The judgment should be reversed. It is so ordered. All concur.