BERTHA HOOPS and JESS HOOPS v. GUY A. THOMPSON, Trustee for the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant. —No. 40847.—212 S. W. (2d) 730.

Court en Banc, June 14, 1948.

Rehearing Denied, July 12, 1948.

*M. Walker Cooper* for appellant.

1162

*Cope & Ponder, Tedrick & Tedrick* and *Phillips & Phillips* for respondent.

[731] CLARK, J.—Respondents filed their petition in the circuit court alleging that, while they were sitting on a pier of a bridge on appellant's railway, they were scalded and burned by the negligent emission of hot water and steam from one of appellant's engines. A judgment in their favor was affirmed by the Springfield Court of Appeals. [207 S. W. (2d) 300.] On appellant's application we have caused the case to be transferred here.

Appellant urges that the trial court erred in overruling motions for a directed verdict in favor of appellant at the close of respondents' case and at the close of the whole case; also that error was committed in the giving and refusal of instructions.

There is sharp conflict in the evidence, but a summary thereof most favorable to respondents is as follows: Appellant maintains a railway bridge extending east and west across Black River in the city of Poplar Bluff. On the east bank of the river and near the east end of the bridge the track rests upon a concrete pier extending about five feet beyond the south end of the ties. A short distance west of the pier steel beams or columns twenty inches wide slope upward on

each side of the track and are connected by steel rods extending over the track at a height sufficient to permit the passage of trains. Similar beams are at the west end of the bridge. There was abundance of testimony that for a number of years many persons used the bridge to walk from one side of the river to the other. There was some evidence, more particularly mentioned hereafter, that at times persons sat upon the piers at the side of the bridge. The railroad maintained warning signs at each end of the bridge stating that "trespassing upon the tracks, bridge and right-of-way is positively forbidden," but there was testimony that the sign was not up at the east end of the bridge on the day respondents were injured.

On September 9, 1945, respondents, husband and wife, had spent some time near the bridge watching persons fishing in the river. After going to their home for the evening meal they returned to the bridge and sat on the east pier near the south side of the bridge. About nine p. m. a freight train came across the bridge from the west and, respondents testified, the engine began to emit steam and hot water when about ten feet from them and continued to do so until it reached and passed them, causing them to be scalded and burned.

Respondents introduced in evidence a rule of appellant stating that "blowing of locomotive boilers not equipped with blow-off cock mufflers is prohibited" at specified places, including bridges.

Appellant says the testimony fails to make a submissible case because there was no proof that the trainmen actually saw respondents. That, although the evidence of user of the bridge by pedestrians is sufficient to cast upon the trainmen the duty to keep a look-out for persons on the track, there was no duty to look for persons sitting on the piers and such persons were trespassers. Appellant also says that violation of a self-imposed rule of the railway was not negligence per se.

From cases hereafter cited and others we glean the following fundamental rules of law. A railroad generally has the exclusive right to the use of its tracks. However, it has no right to expect a clear track at public crossings or at other places where it has actual or constructive notice that people are habitually using its track. To constitute constructive notice of such user, the use must be open and constant over such period of time as to raise the presumption that it is known to the employees of the railway. At places where there is no right to expect a clear track the railroad must keep a vigilant look-out; at all other places the railroad is liable only when its employee actually sees a person in danger in time, with the means at hand and with safety to himself and others in his charge, to avoid injuring such person. The requirement for such look-out is confined to the place of user and does not extend to other portions of the railway property. [732] [Crossno v. Terminal Ry., 333 Mo. 733, 62 S. W. (2d) 1092; Eppstein v. Ry., 197 Mo. 720, 94 S. W. 967; Voorhees

v. Ry., 325 Mo. 835, 30 S. W. (2d) 22; Cochran v. Thompson, 347 Mo. 649, 148 S. W. (2d) 532.]

In the instant case the evidence is sufficient to require the railway to keep a look-out for pedestrians crossing the bridge. Is the proof of user sufficient to require the railroad employees to keep a look-out for persons sitting on the pier where respondents were when injured?

For proof of public user of the pier, respondents rely upon the following witnesses. *Jess Hoops*, a respondent, said that "on a number of occasions" he had seen people using, standing or sitting on the pier. *Mr. McMurray*, never saw anyone stopping or standing on the bridge. *Henry Overfield*, over a period of many years had seen a great many persons use the bridge, had seen them under it and fishing around it; "I have even seen the kids up on them piers." *Ray Allard*, had seen many people use the bridge at all times of the day and night, though there was a sign there ever since he could remember telling them not to use it. Never saw any one on the piers. *Leonard Blackburn*, said the warning sign was off the post and down in the weeds on the day respondents were injured. For a year and a half or two years he had seen people crossing the bridge and fishing near it; had seen kids jumping off the pier, but had never seen any one sitting on it. *Eli Sliger's* testimony as to seeing persons on the pier was excluded upon an objection that the question was leading. *Nellie B. Scott*, saw children jumping off the pier "many, many, many, many, times." That was some time in 1945.

Jess Hoops was the only witness who testified that he ever saw any one sitting on the pier. Three others said they had seen children on the pier, but how frequently they did not say. Nellie Scott said she saw children playing on the pier many times in 1945. She didn't specify the time in 1945, nor whether she saw them on more than one day.

The testimony does not show such open and continuous user and for such length of time as to apprise the railroad employees that they should expect persons to be upon the pier. [Crossno v. Terminal Ry., 333 Mo. 733, 62 S. W. (2d) 1092; Cochran v. Thompson, 347 Mo. 649, 148 S. W. (2d) 532.]

There was no proof that the trainmen actually saw respondents on the pier. But respondents say the engineer testified that he always did look for persons on the bridge and the only reason he did not see respondents was because he claimed they were not there; also that "to look is to see" and the engineer is held to have seen all that he should have seen, citing: Whiteaker v. Mo. Pac. Ry., (Mo. App.) 28 S. W. (2d) 680; Same, 15 S. W. (2d) 952; Nicholson v. Frisco Ry., (Mo. App.) 51 S. W. (2d) 217; Beck v. C. R. I. & P. Ry., 327 Mo. 658, 37 S. W. (2d) 917; Rodgers v. Frisco, (Mo. App.) 31 S. W. (2d) 546; Coogan v. Nighthawk, etc., (Mo. App.) 193 S. W. (2d) 388;

Maurizi v. Western Coal Co., 321 Mo. 378, 11 S. W. (2d) 268; Ralston v. Swaithes, (Mo. App.) 142 S. W. (2d) 340.

We do not agree with respondents either as to their interpretation of the engineer's testimony or as to the applicability of the cases cited. We quote from the engineer's testimony: On cross-examination:

"Q. How far to the right could you see?

A. Well as you enter that bridge you can't see very far to the right because of those steel girders, they blind you on that side.

Q. Well if this lady was sitting where this picture shows could you have seen her?

A. Well I doubt it very much.

Q. Could you have seen those if they were facing you as they are in that exhibit?

A. I could if they had been there.

Q. You say they were not there?

A. They were not there."

On re-direct examination:

"Q. Did you see anybody in the vicinity of the bridge at all that night?

A. No Sir, it was pitch dark when we went over that bridge that night. We had the headlight burning. If there had been anybody inside I could have seen them but there wasn't as I told Mr. Cope.

Q. Now was it possible for you to see any one sitting outside the ties right at the [733] end of that structure of the bridge there?

A. No it wasn't."

Respondents testified that they could see the engineer in the cab as the train approached; that he was looking ahead and there was nothing to prevent him from seeing them.

Respondents introduced in evidence some pictures, but the record does not show what picture was referred to in questioning the engineer. These pictures were taken in daylight. From our examination of them we do not think they aid respondents' case. They show that the column or girder just west of the pier would to some extent and, we think, to considerable extent, obstruct the engineer's vision of the pier as he came from the west. Our study of the testimony and exhibits offered by respondents convinces us that a person would have to be against the end of the ties to be even partly visible in day light from the cab of an engine approaching from the west. Respondents' exhibit two is a picture taken with a camera located west of the bridge and pointing east. It shows a woman and man just beyond the pier at the east end of the bridge, apparently close to the ties and leaning around the steel beam, toward the track. Only the woman's head and shoulders and part of the man's head are visible. There was no proof as to how far to the side the light from the headlight would shine.

1166

All the railway cases cited by respondents on the proposition "that to look is to see" are cases in which persons were struck while on railway tracks. They are not in point. Here it was incumbent on respondents to prove that the engineer actually saw them. Conceding that such proof could be made by circumstantial evidence, it was not so made in this case. We think that both the direct and circumstantial evidence was to the contrary.

■. The violation of a self-imposed rule by respondent did not in itself constitute actionable negligence. [Foster v. K. C. Rys., (Mo.) 235 S. W. 1070] Evidence as to such violation was admissible, but does not make a submissible case here because there was no duty upon the trainmen to look for persons on the pier and no substantial evidence that the engineer saw respondents.

It is unnecessary to pass upon the action of the trial court in giving and refusing instructions. We hold that no submissible case was made and the judgment of the trial court is reversed. All concur, except *Tipton, J.*, not sitting.