**W. C. COONCE, Appellant-Respondent,**

**v.**

**MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Respondent-Appellant.**

No. 48937.

Supreme Court of Missouri,

Division No. 2.

July 16, 1962.

Ralph R. Bloodworth, Bloodworth & Bloodworth, Poplar Bluff, for W. C. Coonce.

George W. Holmes, Mark M. Hennelly, Allen D. Churchill, St. Louis, for Missouri Pac. R. Co.

BOHLING, Commissioner.

W. C. Coonce recovered a verdict and judgment of $4,500 for personal injuries sustained when struck by a train of the Missouri Pacific Railroad Company, a corporation. In due course each party has appealed. Plaintiff contends that the verdict and judgment is grossly inadequate and seeks a new trial on the issue of damages alone. Defendant contends plaintiff failed to make a case and claims error in the overruling of its after-trial motion for judgment in accordance with its motion for a directed verdict at the close of all the evidence.

 This case is here upon transfer from the Springfield Court of Appeals. See 347 S.W.2d 242. Plaintiff sued for $100,000 damages and recovered $4,500. Plaintiff was severely injured. He appeals on the ground the judgment is inadequate and, absent exceptional circumstances, the amount in dispute is the difference between the amount prayed for and the amount of the judgment in the trial court, as stated by the Court of Appeals. The appeals were properly transferred here.

Plaintiff was injured on defendant's "Cat Branch" line, upon which trains move north past the station in Poplar Bluff, Missouri, and thence eastwardly, cross the Cat Branch bridge over the Black River about 600 feet east of the station and, about three-fourths of a mile farther east, cross a levee.

Plaintiff, 52 years old, owned and, with his wife, lived on twenty acres of land about five miles east of Poplar Bluff and a quarter of a mile south of defendant's tracks. He came to Poplar Bluff about noon of May 10, 1958. He loafed around, and that evening proceeded to defendant's station until he came to the Cat Branch track and started walking on or alongside the track toward his home. He walked in the dark, crossed the Black River bridge, and arrived at the levee "after 8:30 p. m." He adduced evidence that the night was

clear, there was no fog or rain. He testified there were no lights on the track or around where he was. Defendant's track is straight and level for the three-fourths of a mile between the bridge and the levee. He stated: "The levee runs around Poplar Bluff." The levee there extends north and south. Plaintiff did not know when the trains ran. He was tired, and "thought I would rest a little bit and go home." He sat down, facing north, on the south rail of the track about fifteen or twenty feet west of the levee ditch, with his feet between the rails, folded his legs, put his arms across his legs, his head on his arms, and went to sleep. He next remembered being dragged along the railroad track, could feel his feet dragging and hitting rocks, and then next remembered being in the hospital. According to all the testimony, plaintiff was south of the tracks and east of the levee after the accident, plaintiff's witnesses putting him 30 to 40 feet east and defendant's witnesses putting him 55 feet east of the levee.

Plaintiff read the deposition of Lovell Miller, the engineer of defendant's train. The train was not quite a mile long, had four Diesel units pulling 111 cars, 105 of which were loaded. It was dark, and the weather was foggy, kind of a misty fog, not raining. He had gradually increased the speed of the train to about 28 m. p. h. when he first saw what looked like a man "hunkered down" on the rail about 150 to 200 feet ahead. He immediately applied the air brakes, full power, sounded short blasts of the whistle and rang the engine bell. Plaintiff never moved. The train came to a complete stop in 927 feet. The equipment on the train, including its headlight, was in good condition.

Plaintiff's witness Robert L. Losh, a retired Missouri Pacific engineer, who had operated and was familiar with defendant's Diesel engines and their headlights in use on May 10, 1958, testified that such a Diesel headlight in good condition would light up the track on a clear night and reveal a man

sitting in the position plaintiff was sitting 1200 to 1500 feet ahead, regardless of the color of the clothes the man was wearing.

Plaintiff's counsel judicially admitted that plaintiff was contributorily negligent as a matter of law, and submitted plaintiff's case on defendant's duty to have timely stopped its train under the humanitarian doctrine.

Plaintiff alleged in his petition, among other things, that he "was sitting along and upon the defendant's railroad tracks at a point *east* of Poplar Bluff, Missouri, at a place where the general public usually and habitually walk in traveling to and from the Morrocco-Providence Community to the City of Poplar Bluff, Missouri." (Italics supplied.)

Plaintiff predicated a verdict upon findings to the effect, so far as material, "that the railroad track both east and for one-half mile west of the point where plaintiff was struck was at that time frequently used, and had for a long time prior thereto been frequently used by pedestrians with the knowledge of the defendant, its servants, and employees, as a passway leading to and from the city of Poplar Bluff" and, if so, then it was the duty of defendant's trainmen "to exercise ordinary care to keep a lookout for persons on said track"; and further findings that plaintiff, "asleep and oblivious" of defendant's approaching train "while sitting on defendant's track after dark became in imminent peril of being struck by defendant's train"; that defendant's employees "under the weather conditions then and there prevailing and by use of the train headlight then and there in operation saw, or by the exercise of ordinary care could have seen the plaintiff in such position of imminent peril" and thereafter, under the humanitarian doctrine, could have but did not stop said train and avoid injuring plaintiff.

Plaintiff's presentation here is on the theory defendant was not entitled to expect a clear track at the places specified by reason of the use of its track by pedestrians as a passway to and from Poplar Bluff for so long a time and so frequently prior to plaintiff's injury as to impose a duty upon defendant to exercise ordinary care to look out for and discover persons upon its said track. Plaintiff's counsel stated in argument here that if defendant did not owe plaintiff the duty to look out for him, that is, to discover his peril, plaintiff failed to make a case.

A railroad track is private property and the railroad generally has the exclusive right to the use of its tracks except at public crossings or in certain situations at other places where it has actual or constructive notice of the habitual use of its tracks by the public. Hoops v. Thompson, 357 Mo. 1160, 212 S.W.2d 730, 731; and see Isabel v. Hannibal & St. J. Rd. Co., 60 Mo. 475, 482 (cited by plaintiff). As stated in plaintiff's case of Rice v. Jefferson City Bridge & Transit Co., Mo., 216 S.W. 746, 752 (citing plaintiff's case of Eppstein v. Missouri Pac. Ry. Co., 197 Mo. 720, 734, 94 S.W. 967, 971), the railroad's knowledge of public user is not generally established by direct evidence, "but must be inferred, if they exist, from other facts, as, for example, the long acquiescence of the company in the open, known, free, continuous, and extensive use of its tracks by the public as a footway." At places where the railroad has no right to expect a clear track its duty is to exercise ordinary care to maintain a lookout for persons upon the track; and at all other places there is no duty on the trainmen to act until they actually see a person, a trespasser, in danger. The Hoops case, supra, and cases cited; Frye v. St. Louis, I. M. & S. Ry. Co., 200 Mo. 377, 98 S.W. 566, 574, 8 L.R.A.,N.S., 1069; Barney v. Hannibal & St. J. R. Co., 126 Mo. 372, 382(I), 28 S.W. 1069, 1071(1), 26 L.R.A. 847.

Peach Street, a graveled east-west street, is about 300 feet north of and parallels defendant's tracks. We understand Pine

Street, on which is located U. S. Highway 60, is a block north of Peach Street. There is a house on Peach Street at the levee and some residences between Peach Street and Pine Street.

Plaintiff's evidence established that no road crossed the railroad where it passed over the levee and that automobiles could not cross over the rails there. Plaintiff testified that in this area there were elm bushes, bushes that grow on wet ground. Plaintiff's exhibits are to the same effect. There are no business establishments or industries in this vicinity. The Gamblin Lumber Company is a quarter of a mile from there.

Coroner Grover Greer drove his ambulance to the scene of the accident. Someone got in the ambulance at Peach Street and showed him how to get around. He didn't have trouble getting in with his ambulance, but described the road as a little dim, a "pretty twisted" road, through some rough area, up to the levee. He drove up on the north side of the track and turned around, because an automobile couldn't cross the railroad tracks. He testified he had been "through there a few times" and "quite a few people" walked on the track and people used it on May 10, 1958. His only testimonial qualification as to people using the track on May 10, 1958, shown of record was his presence at the scene after the accident to take plaintiff to the hospital. He stated that he was 70 years old and it had been "some fifty years" since he had walked this track while a boy working at a mill then in that area. He had not used it in recent years.

Clarence Pierce, Circuit Clerk of Butler County, testified his farm was east of the levee and north of where the railroad crosses the levee. He testified that the road from Peach Street down to the levee and railroad "was used quite often by a lot of people" prior to May 10, 1958; that the road and pathway on the levee to Highway 60 "was traveled" by the general public;

that there was a pathway but no roadway on the levee south of the railroad tracks, and that the general public used the track between the Cat Branch bridge and where the railroad crosses the levee. On cross-examination he stated he was in Poplar Bluff, away from his farm, ten or twelve hours a day five or six days a week; that the police traveled that area quite often at night; that he did not watch and did not know what people in the automobiles passing there did; that he spends most of his time on Sundays at his farm; that "on Sundays always people will go up and down through there"; "I mean different times of the day," "not just a constant stream of them out through there, but there is people that goes out through there all the time, different times. Q. Would it be better to say occasionally? A. That will be all right. Q. Infrequently? A. That would be all right."

The home of W. L. Peoples, defendant's witness, is at the intersection of Peach Street with the levee, 300 feet north of the railroad. He testified he would see "some few" people, not too often, walking the railroad track; that a few automobiles, one or two a week and possibly two or three on Sunday, would drive on the levee; that a fishing slough is about a half-quarter east of the levee and north of the railroad, and during the fishing season a lot of colored people go there to fish and some come up the railroad and cross over the fence there to get in.

Plaintiff says his injury was within the city limits of Poplar Bluff; and he invokes the statute requiring railroads to fence their tracks along enclosed or cultivated lands or unenclosed lands, and provide cattle guards to prevent horses and other animals getting on the tracks, particularly ¶ 6 of § 389.650, RSMo 1959, V.A.M. S., reading: "6. If any person not connected with or employed upon the railroad shall walk upon the track or tracks thereof, except where the same shall be laid across or along a publicly traveled road or street,

or at any crossing, as herein provided, and shall receive harm on account thereof, such person shall be deemed to have committed a trespass in so walking upon said track in any action brought by him on account of such harm against the corporation owning such railroad, but not otherwise." From plaintiff's petition and submission this issue appears to be an afterthought. Plaintiff stresses Isabel v. Hannibal & St. Joseph Rd. Co., 60 Mo. 475, 482 et seq., an action for the wrongful death of plaintiff's twenty-one-months-old son. The railroad had constructed its tracks in close proximity to plaintiff's house and between the house and the family well. Its employees knew this and that the family crossed the track to obtain water. In that case the irresponsibility of the infant was classed with that of domestic animals, and the admission of evidence of defendant's failure to fence as an element tending to show negligence was held not error. In cases wherein railroads contended that under said ¶ 6 the plaintiff, in walking upon defendant's track, was a trespasser, whether otherwise technically a trespasser or not, we have held said ¶ 6 made no innovation on the general rule for determining that issue. Under like reasoning said ¶ 6 should make no innovation on the general rule for determining that an adult plaintiff is not a trespasser. Murphy v. Wabash R. Co., 228 Mo. 56, 128 S.W. 481, 486(c), and cases cited. This adult plaintiff was contributorily negligent as a matter of law; no publicly traveled road or street crossed the tracks at the place involved; plaintiff was sleeping, not walking, upon the tracks, was not an employee of defendant, and the statute does not affect his status or rights. Consult Barney v. Hannibal & St. J. R. Co., supra, 28 S.W. 1. c. 1072(2); Williams v. Kansas City, C. C. & St. J. Ry. Co., 222 Mo.App. 865, 6 S.W.2d 48, 50 [4].

Plaintiff's other cases on the issue of liability are Morgan v. Wabash R. Co., 159 Mo. 262, 60 S.W. 195; Chamberlain v. Missouri Pac. Ry. Co., 133 Mo. 587, 33 S.W. 437, 34 S.W. 842; Eppstein v. Missouri Pac. Ry. Co., 197 Mo. 720, 94 S.W. 967, 969–971; Rice v. Jefferson City Br. & Transit Co., Mo., 216 S.W. 746.

In the Morgan case plaintiff's husband was walking eastwardly on the day in question on defendant's tracks, which were fenced and paralleled a public road, when an eastbound special train (being run backward, pushing a tender in front, so loaded with coal as to prevent the enginemen from seeing the track, and pulling the caboose) struck and killed him. Plaintiff's evidence established that said track had been used by men, women and children for twenty-five years as a footpath in preference to the country road between the town and a road crossing, near which was a tie yard, to which deceased was going, and steps had been erected over the railroad's fence in the town and also near the road crossing for the convenience of those using the railroad tracks (60 S.W. 1. c. 196). In these circumstances the trainmen were not entitled to expect a clear track and defendant's duty extended to discoverable peril (1. c. 200).

In the Chamberlain case plaintiff's husband, while walking east on defendant's track on his way to work, was struck by one of defendant's eastbound trains at about 6:45 a. m. September 2, 1892. The place involved was at a planked private road crossing, outside the city limits but in a thickly populated neighborhood with large industries along defendant's route and where it had been the custom for years for workmen to walk the track to and from work, and particularly at the hour in question. The court stated the question of defendant's liability "must be answered by a reference to the time and place," and defendant's duty embraced discoverable peril (33 S.W. 1. c. 438–440).

In the Eppstein and Rice cases the plaintiffs adduced facts as favorable to a plaintiff as were the facts in the Morgan and Chamberlain cases. It is not necessary to

extend this opinion to detail them. In each of plaintiff's cases the person struck was standing or walking on defendant's track and in each the casualty occurred in the daytime with the exception of the Rice case. In the Rice case plaintiff had evidence to sustain a finding that her husband was standing or walking on defendant's track and could have been timely seen (216 S.W. 1. c. 751 [1, 2]); and that "the railroad track had for many years been used indiscriminately by pedestrians, both by day and by night, in going back and forth between Jefferson City and North Jefferson, and such use had been continuous and extensive and was known to and acquiesced in by defendant" (1. c. 748).

In Frye v. St. Louis, I. M. & S. Ry. Co., 200 Mo. 377, 98 S.W. 566, plaintiff, at 5:30 a. m., February 16, 1903, started walking from Mill Springs on defendant's track to a saw mill where he worked at Leeper, 1¼ miles north. Pedestrians preferred the track, which was straight, to an adjacent parallel road. After about a half mile the shaking of the ground caused plaintiff to turn his head and defendant's engine was upon him. Plaintiff testified "there was a heap of people going and coming both ways, night and at all times during the day." A plaintiff's witness testified that eight or ten millmen walked the track to and from work and some people likewise used the track to go to a saloon at Leeper at night to drink. There was other testimony of a general nature of travel over the track at night. The track was fenced, and warnings were posted not to use the track. The court pointed out that a railroad's right to a clear track might be waived by its tacit consent and long acquiescence in permitting the open, known, free, continuous and extensive use thereof by footmen and its duty thereby extended to exercise ordinary care to look out for and protect footmen against injury. Conceding, arguendo, that the daytime use was such as to deprive the railroad of the right to expect a clear track, the court held the

nighttime use of the track by eight or ten millmen living at Mill Springs and working at Leeper and by thirsty denizens of Mill Springs to drink at the Leeper saloon did not deprive the railroad of its right to expect a clear track in the nighttime at the place plaintiff was injured; that it owed plaintiff no duty to look out for him, and that plaintiff had the burden of establishing he was actually seen by the trainmen in time to avoid injuring him (200 Mo. 405, 98 S.W. 574).

In Hoops v. Thompson, 357 Mo. 1160, 212 S.W.2d 730, plaintiff and his wife, about 9:00 p. m., were sitting upon a concrete pier which extended about five feet beyond the south end of the ties near the east end of the defendant's bridge over the Black River. An eastbound freight passed over the bridge and, according to plaintiffs, the engine when about ten feet west began emitting steam and hot water, which scalded and burned plaintiffs as it passed. Defendant admitted there was a sufficient user of the bridge by pedestrians to place a duty on its trainmen to look out for persons on the tracks of the bridge. There was some evidence that at times persons sat upon the piers at the side of the bridge and that children played on and jumped off the piers. Court en Banc held the evidence did not establish such open and continuous user and for such a length of time as to apprise the railroad that it should expect persons to be upon the piers and thus place a duty upon it to maintain a lookout for the plaintiffs while upon the pier, stating: "The requirement for such look-out is confined to the place of user and does not extend to other portions of the railway property," citing, among others, the Crossno case, infra.

To bring a case within the rule depriving a railroad of its right to expect a clear track "'the use established in the public may be likened somewhat to that giving rise to a prescriptive right; i. e., the use must be a known use, and *must be*

*confined to the limits proved.'* (Italics ours.)" Crossno v. Terminal R. Ass'n, 333 Mo. 733, 62 S.W.2d 1092, 1093 [2]. See also Ducoulombier v. Baldwin, Mo.App., 101 S.W.2d 96, 101 [7, 8], second appeal, Ducoulombier v. Thompson, 343 Mo. 991, 124 S.W.2d 1105 [1], reversing a plaintiff's judgment.

It is stated in English v. Wabash Ry. Co., 341 Mo. 550, 108 S.W.2d 51, 57: "However, this rule of waiver of the right to expect a clear track has always been applied to places of limited extent around which there is a considerable population in cities or towns, or which is continuously used for access to shops, mines, industries, work camps, schools, or other similar places where a considerable number of people go regularly at certain times."

In Cochran v. Thompson, 347 Mo. 649, 148 S.W.2d 532, plaintiff's husband was "hunkered down" in the daytime against the west rail of defendant's north-south track about a half mile south of Poplar Bluff. The trainmen saw this object when a quarter to a half mile south of it, but did not discover it was a man until within 250 to 300 feet of it. The train stopped in 800 to 900 feet. This was in open country and defendant's tracks were properly fenced, but plaintiff's evidence established public user of defendant's tracks by pedestrians at the place involved. True, the facts in the Cochran case differ from the facts in the case at bar, but the court stated (148 S.W.2d l. c. 536): "Moreover, as the Frye case [98 S.W. 566, 573] commented on lack of evidence 'to establish the night use' of that defendant's track for travel, so here there is a complete absence of any evidence to establish use of this defendant's track for lying down. [Citing cases.]" After pointing out that in none of plaintiff's cited cases was the person struck "hunkered down" as was plaintiff's husband, the court held "that the evidence of user is insufficient to place upon defendant the duty of keeping a lookout to discover a man in such a position at such a place."

Plaintiff says he presented stronger evidence of public user than was presented in his cited cases. We have read plaintiff's cases and others. We do not agree. In all of his cited cases the injured person was walking or standing on the track, and the casualty occurred in the daytime (with one exception), and at a time and place wherein the public user of the track was well established. The exception is the Rice case, supra, where there was an indiscriminate user for many years of defendant's track at the place in question during the nighttime as well as the daytime. Plaintiff states he is not attempting to prove constant use of defendant's track for the three-fourths of a mile between the Cat Branch bridge and the levee. Witness Greer had not been over the track in recent years and his testimonial qualifications as to public user appear based upon the user when he was a boy working at a mill then in that area "some fifty years" prior. Plaintiff's witness Pierce's testimony of the greatest user was of people going up and down "through there on Sundays"; and that the "better" characterization of that user was "occasionally," "infrequently." It is doubtful that he removed notice to defendant of daytime public user from the field of speculation. The area where the tracks cross the levee was one in which elm bushes were growing. There were no business establishments or industries in that area. There was no evidence that residents of any of the houses, which were 300 or more feet from where the railroad crosses the levee, used the tracks. Pierce had seen automobiles pass through that area at night, the police quite often, but did not know what the people in the automobiles did. The tracks were not laid across a publicly traveled road or street. Motor vehicles could not and did not cross the tracks. The evidence did not establish the extent of any public user of the levee south of the railroad.

In the Frye case, supra, the user of defendant's track by eight or ten mill workers at night and also by residents of Mill Springs to go to a saloon at Leeper at night to drink did not deprive the railroad of its right to a clear track and placed no duty upon it to look out for people on the track in the nighttime. In the case at bar there is less evidence of a public user of defendant's track in the nighttime at the place involved, as, also, less evidence of user than in the Hoops case, supra. And note the evidence of public user of the track where the person struck was "hunkered down" against the track in the daytime in the Cochran case, supra. A path for use as a passageway on or along a railroad track is not an invitation to use the track for a place to sit or sleep. Driving automobiles from Peach Street or from U. S. Highway 60 to the area where defendant's track crosses the levee does not establish a public user in the nighttime of a railroad track that cannot be crossed. The evidence of user in the case at bar did not place a duty upon defendant to keep a lookout to discover a man in plaintiff's position at the place involved.

There is no probative evidence of record upon which to base a submission that the trainmen could have avoided injuring plaintiff after they actually discovered him upon the track. Plaintiff concedes this.

Plaintiff's injuries bespeak sympathy but should not disturb the scales of justice. We conclude plaintiff failed to make a submissible case of nighttime public user.

The judgment is reversed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.