**Orville C. PAYNE and Mary Payne, Plaintiffs-Appellants,**

v.

**Edward Clark STAMBAUGH, Defendant-Respondent.**

No. 48050.

Supreme Court of Missouri,

Division No. 2.

Sept. 11, 1961.

Rozier, Carson & Nacy, Jefferson City, for appellants.

W. C. Whitlow, Fulton, for respondent.

PER CURIAM.

This action was instituted by plaintiffs in an effort to recover damages from the defendant in the sum of $25,000 for the alleged wrongful death of their minor son, John Michael Payne. A trial resulted in a verdict for the defendant. Plaintiffs have appealed and here contend that the trial court erred in giving Instructions E, C, and A at the request of defendant.

John, 14 years of age, was killed at about 7:05 p. m. on April 15, 1958. At the time of the casualty he was riding a motorized bicycle southwardly on Route C in rural Callaway County. Defendant's car (also southbound) struck the bicycle from the rear at a point on the highway about one mile south of the village of Hams Prairie. The place where the collision occurred is described as a moderate "dip" in the road. In other words, as one approaches the point of impact from the north there is a gradual

downslope which levels out for a short distance at the "dip" and the road then starts up a moderate hill or "slope." The collision occurred in the center of the southbound lane at the point where the hill "starts up."

Mrs. Helen Dolman who lived nearby was an eyewitness to the tragedy. She was driving north and was "closer than the distance of this courtroom" from the bicycle when it was struck. She stated that it was dark enough at that time for headlights and that both her car and the defendant's had their headlights on; that she could see 500 feet with headlights and could see 200 feet without the lights; that as she approached defendant's car both drivers dimmed the lights; that she did not see the bicycle until "seconds before he hit"; that she did not hear defendant sound a horn but did hear his brakes applied "just seconds" before the car hit deceased; that when the collision occurred John went into the air and hit the windshield, "then went on up over the car"; that she stopped to see who it was, then went on to Hams Prairie and called the ambulance and the highway patrol; that the ambulance arrived from ten to twenty minutes thereafter.

Trooper Fischbeck of the highway patrol testified that he arrived at the scene of the collision at 7:23 p. m. and made an investigation of the occurrence. He stated that the 1955 Chevrolet operated by defendant had left relatively straight skid marks in the southbound lane of the blacktop road for a distance of 213 feet; that the skid marks started near the base of the downslope and extended across the dip and started up the other hill; that the bicycle and motor were under the front of the car but the front wheel of the bicycle was 67 feet to the rear of the car; that the bicycle was not equipped with any lights but did have a "very small" piece of Scotch-like reflecting tape on the rear fender; that defendant had stated that he had been driving 55 miles per hour and "as far as I can tell he was right in the center of my lane without any lights. I couldn't see him. It was at a time of day you couldn't see anything."

The defendant testified that he turned the lights on his car a short time before the collision because "it was dark enough I needed them"; that he saw the car approaching from the south and "my lights were on bright and she dimmed and I dimmed and we were going down this slope —she was coming down the one from the south—and when I got to the boy, I was right up on him, I didn't see him until I was right at him. When I seen him I hit the brakes but I was too close. Q. Did you attempt to do anything to prevent hitting this young man? A. I did nothing but the braking. Q. You didn't swerve your car to the right or left? A. No, there wasn't time." At another place in his testimony defendant estimated that he was not over 20 feet from the boy when he saw him. In an effort to explain his failure to see him sooner defendant stated that he was blinded to a certain extent by the lights of the oncoming car, and that John was wearing blue jeans and a dark flannel shirt. He stated further that after the car hit the bicycle he "released the brake for fear that the boy might be under the car."

There was considerable conflict in the evidence concerning the degree of darkness at the time of the casualty and the ability of a person to see either with or without lights. We have heretofore stated some of that testimony. The ambulance driver, Robert Masure, testified that he was called at 7:10 p. m., at which time it was dusk; that he used headlights although it was not necessary as he could see 100 feet without the lights. Guy Bezler stated that he arrived at the scene when they were putting the boy in the ambulance and that he had not been using the lights on his car, although "maybe I should have had them on possibly according to law." A young man, Theron Lamons, one of John's neighborhood friends, stated that he could see objects at that time without the aid of lights

for 500 feet and perhaps a half mile. Evidence was presented to the effect that the sun set in that vicinity on that day at 6:45 p. m.

John was taken by ambulance to the hospital in Fulton where a doctor pronounced him dead.

As heretofore indicated plaintiffs contend that the court erred in giving Instruction E which reads as follows: "The court instructs the jury that the law requires even of a boy 14 years of age, that he shall exercise such care and foresight in avoiding danger and accident, as he is capable of exercising; and if the plaintiffs' deceased son failed to exercise such a degree of care and thereby contributed directly to his own injury and death, then plaintiffs cannot recover on primary negligence as set out in Instruction P–3. In determining the capacity of plaintiffs' son to foresee and avoid danger to which he exposed himself, the court instructs you that it is proper for you to consider, among other facts and circumstances in the case, his age, his experience and knowledge of the risk and danger attending the act of operating a motor vehicle without lights at the time of day in evidence." Plaintiffs state in their brief that the instruction is erroneous because it fails "to hypothesize any facts which, if found by the jury, would constitute contributory negligence."

We agree with the contention of plaintiffs that the instruction in question is prejudicially erroneous because of its failure by reference or otherwise, to require the finding of any fact which would defeat plaintiffs' right of recovery. Of course, one purpose of the instruction was to explain the degree of care required of a boy 14 years of age. However, it went further and told the jury that plaintiffs could not recover on primary negligence as submitted in Instruction P–3 if their son failed to exercise the requisite "degree of care and thereby contributed directly to his own injury and death."

The court gave Instruction A which specifically submitted the contributory negligence of deceased in operating the motorized bicycle without a lighted headlight and taillight "at a time and place where there was not sufficient light to render clearly discernible persons and motor vehicles on said highway for a distance of 500 feet." Other acts of contributory negligence were pleaded but not submitted. Instruction E did not hypothesize any facts. It also failed to refer to Instruction A specifically or to other instructions generally. In other words, to repeat, the jury was told in the most general terms that if deceased failed to exercise the proper degree of care and thereby directly contributed to his own death "then plaintiffs cannot recover on primary negligence." Under that submission the jurors were free to find that deceased was guilty of contributory negligence in any respect or upon any theory they might construct or formulate in their own minds. That type of general submission has been frequently held to constitute reversible error. Jones v. Rash, Mo.Sup., 306 S.W.2d 488; Pulse v. Jones, Mo.Sup., 218 S.W.2d 553; Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54; Counts v. Kansas City Southern Ry. Co., Mo.Sup., 340 S.W.2d 670.

Defendant seeks to defend the instruction upon two grounds. It is first said that the same instruction was approved by this court in the case of McCarthy v. Cass Avenue & Fair Grounds Ry. Co., 92 Mo. 536, 4 S.W. 516. It is true that a similar instruction was held not to be erroneous in that case against the sole contention that "it required a too high degree of care on the part of the boy." 4 S.W. 518. Since the instruction in McCarthy was not attacked upon the ground we are here considering that ruling lends no support to defendant.

The other argument advanced by defendant in support of the instruction is that the defense of contributory negligence was submitted in Instruction A, and since the in-

stant instruction was offered for the sole purpose of instructing on the effect of youth in determining the issue of deceased's contributory negligence it did not need to hypothesize any facts. The difficulty with that contention is that the instruction went further and, in effect, directed a verdict against plaintiffs if deceased failed to exercise the proper degree of care and thereby directly contributed to his own injury and death. Moreover, the omission in Instruction E was not cured by the giving of Instruction A specifically submitting contributory negligence. In considering a similar contention in Pulse v. Jones, supra, we stated: "That other instructions given by the court submitted certain of the specific contributory negligence alleged does not mitigate against the error in giving instruction 4. This instruction was a mere roving commission to the jury to wander afield and single out imagined factors of contributory negligence of speculative value whether pertinent to the case or not, all to plaintiff's prejudice." 218 S.W.2d 556.

For the reason heretofore stated we hold that Instruction E was prejudicially erroneous. Our ruling upon the sole point heretofore discussed should not, however, be construed as an approval of the instruction in other respects.

Since the judgment must be reversed and the cause remanded for a new trial, we deem it unnecessary to include herein any extended discussion of alleged errors relating to the content of other instructions. Prior to another trial defendant's counsel will no doubt re-examine them and make such corrections as may be considered necessary. In that connection, however, we should perhaps mention that Instruction C is difficult to understand and does not appear to hypothesize a proper sole cause situation. Also, we note that defendant's Instruction D is not a correct converse of the plaintiffs' humanitarian submission and that the direction of a defendant's verdict therein should have been limited to the humanitarian submission.

Since it may arise upon another trial we will briefly consider another contention advanced by plaintiffs, i. e., that defendant was guilty of negligence as a matter of law and hence the court erred in giving a sole cause instruction. This point is based upon defendant's testimony that he was looking down the road but did not see deceased until his car was about 20 feet from the bicycle. We are of the opinion that defendant was not shown to be guilty of negligence as a matter of law. In that connection it should be noted that defendant's testimony concerning the distance involved was, of necessity, an estimate and he is not strictly bound thereby. Moreover, while defendant is charged with the duty of seeing that which was plainly visible, it does not appear from his testimony (nor directly from any other evidence) that deceased was plainly visible to him for any substantial distance before his car reached the place of collision. Considerable evidence indicates the contrary. In reaching our conclusion we have considered the following: (1) the occurrence was at dusk which is a time when it is difficult to see on the highway, (2) the vehicle deceased was riding was small as compared with vehicles usually seen on highways, (3) the bicycle was unlighted and deceased was dressed in dark clothing, (4) just prior to the collision defendant's car was traveling downgrade which would tend to limit the forward projection of the beams from its headlights, and (5) defendant was in the process of meeting an oncoming car with headlights burning.

If, upon another trial defendant offers a proper sole cause instruction, and the evidence is substantially the same, it should not be refused because of the contention that defendant was guilty of negligence as a matter of law.

The judgment is reversed and cause remanded for a new trial.