EDWARD J. STEELE, Appellant, v. KANSAS CITY SOUTHERN RAILWAY COMPANY.

In Banc, January 4, 1924. ·

1. **DEMURRER TO EVIDENCE:** Trial and Appellate Practice. The trial judge has power to set aside a verdict which he considers against the weight of the evidence; the appellate court can only determine whether there was substantial evidence upon which to base such verdict, and must accept as true the evidence which tends to support the verdict if one was returned, or which tended to authorize a verdict where a demurrer thereto was sustained by the trial court. But the truth of the testimony is not for the determination of either the trial judge or the appellate court, but only for the jury. And in this case, it is *Held* that there was sufficient substantial evidence that the engine which struck plaintiff was defendant's engine, to carry the case to the jury, and therefore the demurrer should have been overruled.

2. **NEGLIGENCE:** Humanitarian Rule. Testimony tending to show that defendant's engine going at the rate of four or five miles per hour, with a freight car in front cutting off the engine's light and preventing a view of the track by the engineer and fireman, moved eastward upon a track laid in a much-used public street, without any warning or light and unprotected by a switchman, and struck plaintiff as he obliviously walked eastward on the track for two hundred feet, makes out a case for the jury under the humanitarian rule, although it be conceded that plaintiff was negligent in going

upon the track and walking thereon without looking or listening for an approaching train, since under the circumstances the jury may well find that defendant could have anticipated the likelihood of persons walking in the street and could have ascertained plaintiff's presence upon the track in time to have stopped the freight car before it struck him.

3. **TESTIMONY: Contradictory of Testimony at Former Trial: Inconclusive.** The plaintiff is not absolutely bound by his testimony at a former trial. The jury has the right to consider his testimony given at a subsequent trial, notwithstanding it is shown that his testimony at the former trial tended to show the existence of a contrary state of facts. Consequently, after plaintiff had testified he had walked two hundred feet upon the track before he was struck by the train which approached from behind him, the trial court erred in ruling that as plaintiff had made a solemn admission in the first trial of his case that he went upon the railway track at the point where he was injured and was immediately struck by defendant's train, and had not shown that such testimony was due to a mistake, he was bound by such testimony given at the former trial, and in thereupon sustaining a demurrer to his case. [Refusing to extend the announcement in Steele v. Railway Co., 265 Mo. 97, to a subsequent trial of the same case.]

4. ———: **Rehabilitation: Self-Serving.** The sworn deposition of plaintiff, and statements from his testimony on a former trial, tending to corroborate his testimony in the instant trial and to rehabilitate him as a witness after his testimony has been impeached by his former testimony, and thereby showing a different state of facts from that manifested by said impeaching testimony, are competent.

> *Held,* by GRAVES, J., with whom JAMES T. BLAIR, J., concurs, that the corroboration of a witness by such self-serving declarations is a much mooted proposition, and for that reason they neither concur nor dissent from the doctrine of rehabilitation thus announced.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

REVERSED AND REMANDED.

*Kelly, Buchholz, Kimbrell & O'Donnell* for appellant.

(1) The court erred in giving defendant's peremptory instruction, for the reason that the evidence

supported the allegation that plaintiff was in a position of peril near to and on the defendant's north track and that defendant's servants saw or by the exercise of ordinary care could have seen plaintiff in said position of peril, either close to the south rail of the north track or on the north track, in time to have avoided injury to him by stopping the train. Scullen v. Railway, 184 Mo. 695; Rigley v. Pryor, 233 S. W. 828; Dutcher v. Railway, 241 Mo. 137; Morgan v. Railway, 159 Mo. 262; Murphy v. Railway, 228 Mo. 82; Thompson v. Railway, 243 Mo. 191; Taylor v. Railway, 256 Mo. 191; Epstein v. Railway, 197 Mo. 720; Everett v. Railway, 214 Mo. 54.    (2) The court erred in refusing to submit the case to the jury on the ground that defendant negligently operated the train over and toward street crossings on a public street in the nighttime at a place where, to the defendant's knowledge, pedestrians were constantly passing, without ringing the bell or giving other warning. R. S. 1909, sec. 3140; Lamb v. Railway, 147 Mo. 171; Reed v. Railway, 107 Mo. App. 238; Lueders v. Railway, 253 Mo. 97; Beach on Cont. Negl., sec. 95; Petty v. Railroad, 88 Mo. 319; Johnson v. Railway, 77 Mo. 546; Donahue v. Railway, 91 Mo. 364; Groom v. Kavanaugh, 97 Mo. App. 372; Longon v. Railway, 72 Mo., 398; Kerry v. Railway, 105 Mo. 288; Zander v. Transit Co., 206 Mo. 466; Peterson v. Transit Co., 199 Mo. 340; Kirlen v. Railway, 216 Mo. 160; Felver v. Railway, 216 Mo. 212; Kame v. Railway, 254 Mo. 190.    (3)    The court erred in refusing to submit the case to the jury on the evidence supporting the allegation that defendant operated a train backward through Kansas City between sunset and sunrise without having at least one large light, headlight or lantern conspicuously placed on the same facing the direction in which the engine and cars were moving. Weller v. Railway, 120 Mo. 635; Weller v. Railway, 164 Mo. 180.    (4) The court erred in giving appellant's peremptory instruction for the reason that the evidence sustained the allegation that defendant failed to keep a proper lookout for persons who might be on or approaching the track

302 Mo. Sup.—14.

upon which the train was approaching. Sluder v. Transit Co., 189 Mo. 136; Frick v. Railway, 75 Mo. 609. (5) The court erred in refusing to admit in evidence the deposition of the plaintiff taken on February 25, 1911, and before the first trial for the reason that when the defendant attempted to impeach the plaintiff's testimony as a witness by showing contradictory statements, it was proper for the plaintiff as a witness to rehabilitate himself by showing that he made statements prior to the first trial which were consistent with his right to recover. Costello v. Kansas City, 280 Mo. 576, 590; Kelley v. American Central Ins. Co., 192 Mo. App. 24; State v. Maggard, 250 Mo. 345, 349; State v. Sharp, 183 Mo. 715.

*Cyrus Crane* and *Hugh E. Martin* for respondent.

(1) The ruling of the trial court in directing a verdict for defendant was correct for exactly the same reasons that this court held there was no liability in this case when here on former appeal. Steele v. Railway, 265 Mo. 97. (2) The evidence was wholly insufficient to prove the identity of the train that injured the plaintiff. Trains of various companies operated on the same tracks. Plaintiff attempted to fasten liability on defendant's Engine No. 60 and failed in his proof. He is bound by the theory adopted on the trial. Taylor & Sons Brick Co. v. K. C. Southern Ry. Co., 213 Mo. 715. (3) The humanitarian theory, under the facts of the case is wholly inapplicable. (4) For the same reasons that existed on former appeal in Steele v. Railroad, 265 Mo. 97, the submission to the jury of the case on the question of defendant's negligence, was not permissible. (5) Plaintiff's deposition was inadmissible in evidence.

DAVID E. BLAIR, J.—This is an action in damages for personal injuries. At the close of plaintiff's evidence the trial court directed a verdict for defendant and judgment was entered accordingly. After moving unsuccessfully for a new trial, plaintiff appealed. This

court has jurisdiction because of the amount claimed in the petition.

The case has had an unusual history. Plaintiff was injured in the year 1910. Suit was filed soon thereafter which, coming on for trial in due course, resulted in a verdict for plaintiff. The trial court set the verdict aside and granted a new trial. From this order plaintiff appealed to this court. The order of the trial court was affirmed and the cause remanded for a new trial. [Steele v. Railway, 265 Mo. 97.] Thereafter, the case came on for re-trial in the circuit court, and plaintiff suffered a nonsuit. Later a new action was begun, which resulted as above stated. It is conceded that the pendency of the different suits has avoided the bar of the Statute of Limitations.

The uncontradicted facts are as follows:

At the time plaintiff was injured, defendant owned and operated a double-track railroad along Second Street in Kansas City, Missouri, particularly between Walnut Street and Grand Avenue. Several other railroads also used the same tracks. Second Street runs east and west, and Walnut Street and Grand Avenue run north and south and cross Second Street. Ordinarily, west-bound train movements used the north track in said street, and east-bound train movements the south track. An industrial spur track, serving the produce house of Clemons & Company, connected with the north track at or very near Walnut Street. This produce house was north of and close to Second Street, between Walnut Street and Grand Avenue.

About 1:30 A. M., October 26, 1910, the plaintiff was found lying or sitting near the north rail of the south main track. One leg had been crushed just below the knee. The foot of the other leg had been partially crushed. The crushed leg was afterwards amputated. Plaintiff testified, and the finding of a shoe cut in two and some mangled flesh and blood there clearly indicates, that plaintiff was injured by the wheels of an

engine or car, or both, running over his leg and foot while they were upon the north rail of the north track.

A few minutes before plaintiff was found injured, a locomotive of defendant, being Engine No. 60, left three or four cars upon the north track just east of Grand Avenue, and moved westward along said track past the point of the Clemons spur track, backed into said switch and coupled on to an empty car. With said car it then pulled out of said spur track upon the north track, and moved eastward, pushing said car, for the purpose of picking up the cars left standing east of Grand Avenue. It was in the course of this last train movement that plaintiff was discovered.

The testimony of plaintiff was to the following effect: He was employed upon the night shift as an inspector in the Kansas City water department. On the day preceding his injury he was suffering from a severe headache and took a dose of bromo-seltzer for relief. On this particular evening he arrived at the City Hall at the usual hour. No calls coming in to disturb him, he slept in his chair until about midnight. He then felt better, but was dizzy and had a "swimming" headache. He then went to a restaurant adjoining a saloon to get some lunch. He denied that he took a drink of liquor there or that he had been drinking during the day.

Shortly after having his lunch and about 1:10 A. M., he walked north two blocks from the City Hall to see a man at Second and Main streets. Main Street is the first street west of Walnut Street. He did not find the man he sought. He then remembered that he had a report of a leaking hydrant at Second Street and Grand Avenue. He walked east on Second Street between defendant's north and south tracks, and within six or seven inches of the south rail of the north track, until he reached Walnut Street. There he encountered some sort of obstruction between the tracks and stepped over between the rails of the north track and continued walking there slowly toward Grand Avenue until he was knocked down and run over by an engine and freight car or

cars moving eastward upon the north track. The point of injury was about two hundred feet east of Walnut and one hundred feet west of Grand.

Plaintiff claims that he had walked from Main to Walnut close to the north track to avoid danger of injury from eastbound train movements upon the south track and expected train movements upon the north track, if any, to approach him from the east, in which direction he was facing. He did not look back when he stepped between the rails of the north track at Walnut or after that as he proceeded toward Grand Avenue. He heard no signal of any kind before he was struck. He saw no light, nor did he hear the noise of any train movement behind him. He heard trains moving upon tracks farther north, apparently about one-fourth of a mile away. After plaintiff passed Walnut Street, he saw an engine and freight car pulling out of the Clemons spur track. The first he knew of the approach of the train which struck him was when he was struck by it. After he was run over he attempted to crawl toward the north, but could not get up the embankment there. He then crawled south across the north track almost or quite to the south track. The next thing he knew men with lanterns were about him. They asked him where he worked and other questions. Someone gave him a drink of whisky. He soon lost consciousness again.

Second Street was an opened public street of said city. It was used by people on foot at all times of the day and night. There was no light on the freight car, although the switch engine had lights on each end. None of the train crew was riding the freight car to keep a lookout in the direction it was being pushed. One of the switchmen stood on the running board of the engine behind the freight car. Another switchman, after uncoupling the freight car on Clemons spur, walked west along the platform of the produce house down the east steps and thus to Grand Avenue, where he waited for the purpose of coupling the approaching freight car to those left standing there. He saw no one on the track.

There was evidence tending to show that the engine and car of defendant could have been stopped within a very few feet after application of the brakes.

It was developed by defendant upon cross-examination of witnesses put on the stand by plaintiff, that, as defendant's Engine No. 60, pushing the freight car, backed eastward, the fireman called the attention of the engineer to something on the ground south of the engine. The fireman got off with a torch and found plaintiff there. The engine was backed up about twenty-five feet east of the plaintiff, and the engineer and switchmen returned to the point where plaintiff was found. One or more of them testified that plaintiff was intoxicated; that no one gave him any whiskey; that the plaintiff told them several trains had passed since he was struck and injured; that the blood on his face was dried, as were also a few little spots of blood where he was found; that plaintiff's wounds were not bleeding when he was found. They also testified that they examined the north wheels of defendant's engine and freight car and discovered no blood whatever thereon.

One Bickford, employed by the street car company, testified that he was sitting at the watchman's shanty talking to defendant's watchman at Second and Grand; that he saw the locomotive and freight car pull out of the Clemons spur track; that the whistle was sounded by the engine and he walked out with the switchman while he flagged the crossing. He said the engine and freight car backed to a point east of Grand Avenue. After it passed he looked to the west and saw something "flopping" or crawling around at about the point where plaintiff was afterward found. He called the attention of the watchman to it. Thinking that he had seen one of the dogs of the neighborhood he attached no importance to it until after he heard of plaintiff's injury.

While the weight of Bickford's testimony was for the jury, it would seem that the fact that he left Second Street and Grand Avenue soon afterwards and about an

hour later returned, without witnessing the excitement attending the discovery of the plaintiff or hearing of his injury until hours later, while all the other testimony shows that plaintiff was discovered almost immediately after defendant's Engine No. 60 and car had passed ·the point where plaintiff was found, apparently gives little probative force to his testimony. The train movement he testified about crossed Grand Avenue, while the evidence of the train crew was that Engine No. 60 stopped west of Grand Avenue. Bickford's testimony as to the time left it quite uncertain that he actually saw the train movement which injured plaintiff.

Defendant contends that the judgment should be affirmed because plaintiff made no case to go to the jury. It contends there is no substantial evidence that plaintiff's injuries were caused by Engine No. 60 and the car which it was pushing. The tracks in question were used not only by defendant, but also by the Frisco, Grand Island, Great Western and Q. O. & K. C. railroads. The defendant also operated three or four other switch engines over the track. The contention is that it is not shown that plaintiff's injuries were caused by Engine No. 60, rather than by an engine and car of one of the other railroads using the same tracks or by a different engine of defendant; that if such injuries were caused by some other engine of defendant, there is no showing of any negligence on the part of the train crew of such engine.

We have given this contention the most careful consideration, not only because it appears to us quite doubtful, under all the evidence, that plaintiff was in fact injured by the engine whose· crew discovered him, but also because, upon practically the same evidence, Judge Faris expressed such doubt in the opinion upon the first appeal. He there said:

\    "We are likewise in grave doubt whether there was upon the other mooted phase of the case, viz., as to the identity or ownership of the train or cars which struck

and hurt plaintiff, any sufficient proof. But as the case must be re-tried we will not embarrass it by either a discussion or a decision of it at this time.''

Nevertheless we are forced to the conclusion that there was substantial evidence of the identity of Engine No. 60 as the engine which inflicted plaintiff's injuries. The trial judge has the power to set aside a verdict which he considers against the weight of the evidence. We can only determine whether there is substantial evidence upon which to base such verdict. We must accept as true the evidence which tends to support the verdict, if one has been rendered, or which tends to authorize a verdict, where a demurrer to the evidence has been sustained, as here.

Plaintiff fixes the time when he arrived at the point where he was injured at about 1:30 A. M. The evidence tends to show that, about five minutes before that time, Engine No. 60 entered the Clemons spur, coupled on to a freight car, pulled out upon the north track and backed eastward along the track where plaintiff claims to have been walking for about two hundred feet. As he left Walnut Street, plaintiff saw an engine and freight car pulling out of the Clemons spur track going west. There is no question that Engine No. 60 made such a movement at that time. Plaintiff was struck in the back as he was walking slowly and obliviously eastward between the rails. No other train or engine movement is shown to have occurred between the time plaintiff saw Engine No. 60 pulling out of Clemons spur and the time he was struck. When the engine left the string of cars east of Grand Avenue and moved westward to the Clemons spur-track nothing was seen of plaintiff by the engineer or fireman. The front headlight of the engine was burning and he might have been seen had he then been near the track where he was afterwards found.

The foregoing testimony, if believed by the jury, was sufficient to fix the identity of Engine No. 60 as the one causing the injury. The facts, if believed by the

jury, that plaintiff was south of the track, instead of north of it, when Engine No. 60 passed him going back to Grand Avenue, that he said several trains had passed after he was injured and before he was found, that blood from his injuries had then dried and that he was intoxicated, tend strongly to show that the injuries plaintiff received were not caused by Engine No. 60. But the determination of the facts is within the exclusive province of the jury, under the supervision of the trial judge. The truth of the testimony is neither for us nor the trial judge to determine.

The proof, under appropriate allegations in the petition, tended to show that defendant's engine going at the rate of four or five miles per hour, with a freight car cutting off the engine's light and preventing a view of the track by the engineer and fireman, moved eastward upon a track laid in a much-used public street, without any noise or light and unprotected by a switchman. The jury could well have found that defendant should have anticipated the likelihood of persons walking in the street upon such track. If plaintiff was there, he could readily have been seen. Conceding that plaintiff was negligent in going upon the track and remaining thereon without looking or listening for an approaching train, his presence thereon could have been ascertained by the train crew in time to have stopped said engine and freight car before striking him. We think the evidence made out a case for plaintiff for the consideration of the jury under the humanitarian rule, unless the effect of his testimony upon the last trial must be regarded as completely destroyed by his testimony upon the first trial. This question we will next consider.

Upon the first trial, plaintiff testified as follows:

"Q. You had been walking between the tracks? A. Yes, sir.

"Q. You just stepped over on to the north track right at the point where you got hurt? A. Yes, sir.

"Q. And the moment you got on the track you got struck? A. Yes—not at the moment.

"Q.   Just immediately after?   A.   Just immediately after."

After plaintiff had testified at the last trial that, after having walked immediately south of the south rail of the north track from Main to Walnut, he had gotten upon the north track at Walnut and had walked thereon about two hundred feet before he was struck and injured, he attempted to explain what he meant by "immediately after" when he testified on the first day of the first trial.   In cross-examination all the facts were brought out about plaintiff's visit to the scene of the accident at the close of the first day of the first trial and the change in his testimony upon the following morning.   This fully appears in 265 Mo. 97.   At the conclusion of plaintiff's testimony the trial court held that, as plaitiff had made a solemn admission in the first trial that he went upon the track at the point where he was injured and was struck immediately after going upon the track and had not shown such testimony was due to any mistake, he was bound by such testimony given at the first trial, as held by Division Two when the case was here before. The trial judge thereupon gave the peremptory instruction asked by defendant.

Whatever may be said of the soundness of the ruling made by Division Two on the first trial, upon the facts on which that ruling was based, Court en Banc has since twice refused to extend the rule there laid down to a re-trial of the same case.   [Monroe v. C. & A. Ry. Co., 297 Mo. 633, 249 S. W. 644; Davidson v. St. L. & S. F. Ry. Co., 301 Mo. 79.]   In the Monroe Case, paragraph 2 of the opinion, which sought to apply the rule of this case upon former appeal to a re-trial of the same case, received the concurrence of only two of the judges.   Two of the judges expressly dissenting to such paragraph, while concurring in the result reached; three of the judges dissented *in toto*.   Paragraph 2, therefore, was denied a carrying vote.

In the Davidson Case, GRAVES, J., with five of the other judges concurring, said:

"That the plaintiff 'doctored' his testimony for this second trial there can be but little question. At which time he told the truth is another question. Respondent contends that under Steele v. Railroad Co., 265 Mo. 97, the plaintiff should be barred from recovery. Steele's Case stands upon a different basis from this case. The contradictory statements in Steele's Case occurred in the same trial and hearing. Such statements stood as admissions in a case then being heard. It amounted to contradictory admissions at the single trial. In this, it is to be distinguished from the present case. The general rule is that where a plaintiff at one hearing testifies a given way, and at a later hearing testifies to the opposite, it is for the jury to determine what credence it will give to the evidence given before them, as impeached by what such party said at the previous hearing. This contention of respondent cannot be upheld."

It is thus apparent that Court en Banc is committed to the proposition that upon a subsequent trial the plaintiff is not absolutely bound by his testimony at a former trial; that the jury has the right to consider his testimony given at the subsequent trial, notwithstanding it is shown that his testimony at the former trial tended to show the existence of a contrary state of facts; that the rule announced in the first Steele Case opinion cannot be extended to a subsequent trial. It is, therefore, necessary for us to hold that the trial court erred in giving to the jury its peremptory instruction to find the issues in favor of defendant.

One further matter remains for consideration. Plaintiff assigns error in the refusal of the trial court to admit in evidence, for the purpose of rehabilitating plaintiff as a witness, his deposition taken by defendant on February 25, 1911, which was prior to the first trial. Such deposition appears in the record before us as part of plaintiff's refused offer. We quote certain portions

of such deposition which appear to have a bearing on the place in Second Street where plaintiff was walking as he went from Main Street eastward toward the point of his injury, as follows:

"Q. You came up from Second and Main? Which way did you go from Second and Main? A. I went east.

"Q. On what? A. On the track. . . .

"Q. What was there now about the surroundings that you didn't understand? What was there about the dizziness in your head that affected you when you started from Second and Main Streets? A. Oh, just a dizzy feeling is all. Of course a man knows where he is, half way, he knows where he is going, you are not fully conscious.

"Q. Well, were you conscious of the fact that you were going to Second and Main? A. Yes, sir, going to Second and Grand Avenue.

"Q. Well, were you conscious of the fact that you were walking on a railroad track. A. Yes, sir.

"Q. Were you conscious of the fact that you were on the north track? A. Yes, sir. . . .

"Q. Had there been a train or anything pass you before you were hit? A. They were switching on a side track there on Clemons track.

"Q. When? A. Just as I was going down.

"Q. Well, were they switching into Clemons or switching out of Clemons? A. They were switching out of Clemons?

"Q. And where were you at that time? A. Well, I was about three hundred feet east of Grand Avenue, I suppose.

"Q. (By Mr. White): Do you mean east of Grand Avenue? A. I mean west of Grand Avenue.

"Q. When you first saw them switching in at Clemons? A. Yes, sir.

"Q. Was the engine a light engine or did it have hold of a car? A. It was buckled up against the car at the time.

"Q. At the time you first saw it? A. Yes, sir.

"Q. You were then walking east on the north track? A. Yes, sir.

"Q. And which side of you was the engine switching, on the north or south of you? A. North.

"Q. And which way was it pulling? A. Pulling west. Pulling out of the switch.

"Q. You continued on going east, did you? A. Yes, sir."

We think the foregoing excerpts from the deposition excluded by the trial court disclose that plaintiff, prior to the first trial, had given testimony tending to show that he got upon the north track before reaching the point where he was struck and injured. In other words, such deposition tended to corroborate plaintiff's testimony at the last trial and to rehabilitate him as a witness after his testimony had been impeached by his testimony at the first trial showing a different state of facts. "Where a witness is impeached by proof of variant acts or statements, relevant evidence of the witness's prior statements correspondent with his testimony, are admissible for the purpose of rehabilitation." [State v. Maggard, 250 Mo. l. c. 347, citing State v. Grant, 79 Mo. 113; State v. Hatfield, 72 Mo. 518; State v. Whelehon, 102 Mo. 17; State v. Sharp, 183 Mo. l. c. 735; State v. Taylor, 134 Mo. 109.]

On principle it should make no difference in the application of this rule, that the impeaching statements were part of the sworn testimony of the witness upon a former trial, especially where the rehabilitating statements appear in a deposition under oath. The trial court should have admitted the deposition of February 25, 1911, since it had a tendency to rehabilitate the plaintiff as a witness.

For the reasons set forth, the judgment is reversed and the cause remanded for retrial. *Woodson C. J., Walker, White* and *Ragland, JJ.,* concur; *Graves, J.,* concurs in separate opinion in which *James T. Blair, J.,* concurs.

GRAVES, J. (concurring).—I concur in the result and in all of the opinion, except the latter portion thereof which deals with the admission of self-serving declarations by a party to the action, which the opinion denominates as prior statements admitted for the purpose of rehabilitation.

. I am not prepared to subscribe to that doctrine at this time. It has been announced, with some reluctance, in the criminal cases cited by my learned brother. These are cases where the witness being thus corroborated was not a party to the action, and the doctrine of self-serving statements made by a part was not in the cases. The corroboration of a mere witness in this manner is a much mooted question in the general case law. We are not undertaking to rule the question here involved, but are simply keeping our skirts clear at this time, and for that reason we are not concurring in the doctrine now. *James T. Blair, J.,* concurs in these views.

Headnote 1: Trial, 38 Cyc. 1548; Headnote 2: Railroads, 33 Cyc. 903; Headnote 3: Evidence, 22 C. J. sec. 533; Headnote 4: Witnesses, 40 Cyc. 2789.