Jane **FINCH**, Plaintiff-Appellant,

v.

Ruth **KEGEVIC**, Defendant-Respondent.

No. 9169.

Missouri Court of Appeals,
Springfield District.

Oct. 25, 1972.

Benjamin J. Francka, Springfield, for plaintiff-appellant.

Glenn A. Burkart, Mann, Walter, Burkart & Weathers, Springfield, for defendant-respondent.

TITUS, Chief Judge.

Two female-operated automobiles collided at the intersection of east-west University Street and north-south Hampton Street in the City of Springfield. Plaintiff, the sole occupant of her vehicle, was eastbound on University. Defendant was alone in her automobile and traveling north on Hampton. There were no witnesses to the accident other than the two participants, neither of whom saw the other prior to the casualty. Likewise, both parties disclaimed any knowledge of what transpired immediately before, during, or immediately after the impact. Plaintiff submitted her case on two disjunctive assignments of negligence under the humanitarian doctrine. All of the evidence regarding the collision was produced by plaintiff; defendant did not testify and her version of the matter consisted of excerpts read from her deposition by plaintiff. Members of the jury sworn to try the case in the Circuit Court of Greene County returned a $10,000 verdict for plaintiff. Thereafter, defendant moved the trial court for judgment in accordance with her previously filed motion for a directed verdict. Rule 72.02, V.A.M.R. The court obliged defendant by setting aside the verdict and entering judgment in her favor. Plaintiff appealed. The lone issue here is whether plaintiff made a submissible case on defendant's alleged failure to slacken speed or stop under the humanitarian doctrine, and in determining that question we proceed to relate and consider the evidence adduced in the light most favorable to plaintiff's view and afford her every favorable inference, if reasonable, which the evidence tends to support. Cloninger v. Wolfe, Mo.App., 477 S.W.2d 440, 441; Rawson v. Ellerbrake, Mo.App., 423 S.W.2d 14(1).

The first street west of and parallel to north-south Hampton (traveled by defendant) is Kings. A photographer said the distance between Hampton and Kings via University "measured 207 steps [which] would be very close to 600 feet." The first street south of and parallel to east-west University (traveled by plaintiff) is Sunshine. By measuring "the distance from University to Sunshine on Hampton," the photographer "came up with a figure of 100 steps [which] would be approximately 300 feet." University is 30 feet wide, paved with concrete, and is outlined by concrete curbings. The surface of Hampton was variously described as "gravel or gravel and oil," "blacktop," and "bituminous or asphaltic," with "chug holes;" it measures "from 14 feet in width to 18 in various places, and the average mean [sic] width . . . would be about 16 feet. That's just approximate." No curbings delineate the bounds of Hampton. The accident occurred in clear daylight, the roadways were dry, and no signs, signals or other traffic controls were present at the intersection of University and Hampton. Both of the involved vehicles, including their brakes, were in good mechanical condition.

The sight distance across the southwest corner of the accident intersection was confusingly described by an elderly resident there, as follows: (Direct examination) "Q. . . . 60 feet back from the intersection, could you tell the Court how far a person looking to the left or to the west can see on University? A. Well, we have a house on the opposite [side] of the street on the corner, quite a large lot next and then another house. I can easily see all of that distance. I guess I'd say two hundred feet anyhow. . . . Q. . . . is there anything to obstruct one's view as they look west on University? A. No. There is a yew *out to the sidewalks*.[1] It's about four feet high at the highest part on the top, but then it's all clear. (Cross-examination) Q. And you say that when you are 60 feet south of University on Hampton you can see 200 feet west on University? A. There is

---

1. All emphasis herein is ours.

. . . a rather large yew *at the corner of our house*. I would say that would take 12 to 15 feet. I would say 45 feet could be clear. Q. 45 feet what direction? A. Looking west. Q. You say then that when you are 60 feet south of University you can see 45 feet west on University? A. Our house sits, I think 60 feet from the corner. There is a . . . large yew that would cut off another 15 feet possibly so you could see for 45 feet. You could see out University." Testimony of the photographer regarding the sight distance, proceeded thusly: "Q. Now, did you have occasion to observe the shrubbery and growth and the buildings on the southwest corner of this intersection? . . . A. There is some shrubbery *on the corner,* some kind of arbor vitae evergreen and . . . near the west line there is a low hedge and a tree in the corner. . . . Q. Do the branches on the tree obstruct the view of someone looking across the corner of the intersection? A. May I see the photograph? . . . Yes, there's trees. I notice there are three trees in the photograph, so there are three trees there."

A police officer, upon arriving at the scene, found both cars an unstated distance east of the intersection. Defendant's automobile was partially upon the south University parkway and showed signs of having received damage at the front of the left side of the left front fender and to the left rear fender just back of the wheel well. Plaintiff's vehicle was in a yard on the north side of University with its front end nearly against a tree with which it had apparently collided. Damage to plaintiff's car was limited to "the front right and to the front center." The officer observed no skid marks or debris at or near the intersection. He did, however, discover a "freshly made" gouge mark in the concrete, 4 to 6 inches long and pointing southwest to northeast, which was located "14 feet north of the south curb line of University [and] 19 feet east of the west curb of Hampton;" the policeman could not ascertain "which of the automobiles might have made it."

Plaintiff testified she drove south on Kings and, after observing a stop sign, turned left or east onto University. Her recollection is limited to having driven eastward along University "15 or 20 seconds" on the right side of the street, "looking straight ahead, right and left," and not exceeding the "legal speed limit . . . 30 miles an hour," but she could not "remember anything after that." Although plaintiff "had traveled that way several times," she "didn't know Hampton was there."

Those portions of defendant's deposition that were read to the jury are no more elucidating than plaintiff's testimony, and defendant's memory ceased "just as I approached there [the intersection]." Defendant recounted she had driven 15 to 20 miles per hour to cross Sunshine and while traveling on Hampton, but she also stated that before nearing the intersection she slowed from that rate as she intended to stop at University and because "I certainly didn't speed down that rough street [Hampton]." At one point defendant was asked if she did "stop on this occasion" and she replied "I am quite sure I did." However, when pressed further to ascertain definitely if she was "standing at the time of the impact," her answer was, "No, I wasn't standing." Defendant explained there was a "great big tall pine" on the southeast corner of the intersection and "quite a bit of shrubbery, and things there" on the southwest corner of the intersection which prevented a northbound motorist from seeing along University "until you really get to the very intersection . . . . You have to pull out a ways before you can look down [University], you can't stop way back because you can't see. . . . I looked evidently to the right first. . . . I don't recall [looking west or left], of course, after the impact, it is very hard to know. . . . You can't say anything definitely."

The basis for liability under the humanitarian doctrine is that plaintiff came into a position of imminent, impending and immediate danger in which injury

to plaintiff was reasonably certain if the existing circumstances remained unchanged. Calvert v. Super Propane Corporation, Mo., 400 S.W.2d 133, 140(10); Dixon v. Kinker, Mo.App., 410 S.W.2d 347, 351(8). However, it is only when plaintiff comes into such a position and defendant becomes chargeable with notice of plaintiff's peril, that the doctrine seizes upon the situation and imposes upon defendant a duty to thereafter exercise proper care to avoid the threatened injury. When, if ever, defendant becomes chargeable with notice of plaintiff's peril, depends upon the *reasonable appearances* of the situation confronting defendant. In other words, it is the *reasonable appearances* of the situation that imposes upon defendant the duty to act, and this is true whether plaintiff is oblivious or not. Lane v. Wilson, Mo.App., 390 S.W.2d 943, 947(5); Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 432(4). In cases where a moving plaintiff is enroute to the path of defendant's moving vehicle, the plaintiff comes into a position of immediate danger when plaintiff is so close to the path of defendant's car that plaintiff cannot stop before reaching it, and defendant's duty to take effective action arises when defendant, by the exercise of the highest degree of care, should have seen and realized that plaintiff cannot stop before reaching defendant's path of travel. Crockwell v. Oldani, Mo.App., 410 S.W.2d 701, 705(7). Plaintiff here reminds us of the many cases (e. g., Wabash Railroad Company v. Dannen Mills, Inc., 365 Mo. (banc) 827, 832, 288 S.W.2d 926, 929(3)) holding that the zone of peril is considerably widened beyond defendant's immediate path by the obliviousness of a person approaching the path of defendant's moving vehicle. We do not dispute those holdings provided the facts are sufficient that the jury could also reasonably find that plaintiff's obliviousness should have been reasonably apparent to the defendant. Loyd v. Moore, Mo.App., 390 S.W.2d 951, 955. The humanitarian doctrine is not applicable while plaintiff is merely approaching a position of immediate danger, and defend-

ant's duty to take effective action does not arise before plaintiff, whether oblivious or not, actually reaches a position of immediate danger. Davis v. St. Louis Public Service Company, Mo., 316 S.W.2d 494, 497(3). Missouri's humanitarian doctrine has not altered the rule that the burden is on the plaintiff to prove every constitutive element of her cause of action; a humanitarian case which leaves one or more of the essential elements to guesswork, speculation or conjecture is not for the jury. White v. Burkeybile, Mo., 386 S.W.2d 418, 424(8); Bunch v. Missouri Pacific Railroad Company, Mo., 386 S.W.2d 40, 42(2).

Students of thaumatology should not omit examination of the humanitarian doctrine, particularly those cases where judicial application of the doctrine miraculously changes inexact opinions, estimates, assumptions and fuzzy recollections into precise mathematical certainties. Jordon v. Johnson, Mo.App., 411 S.W.2d 451, 452. But even in such instances, it will be found that the records reflect some data (though predicated upon imprecise judgments and approximations) from which the triers of the facts could calculate the location and speed of defendant's vehicle when plaintiff was at a given point, the location and speed of plaintiff when defendant was at a given point, and the location of defendant when he reasonably should have realized that plaintiff was in a position of immediate danger in time thereafter to have avoided the injury by effective action. Insofar as information on these subjects was developed and is reflected by the transcript on this appeal, it is conspicuous simply by reason of its absence. Farmer v. Taylor, supra, 301 S.W.2d at 432–433.

Plaintiff's professed ignorance of the existence of Hampton Street, her claim that she did not see the defendant's vehicle at any time prior to the accident, and her asserted inability to recall what transpired immediately prior to the collision do not serve as criteria for determining obliviousness under the humanitarian doctrine. In

determining when defendant becomes chargeable with notice of plaintiff's peril, obliviousness vel non of the plaintiff is to be decided upon the reasonable appearances of the situation confronting defendant and not on whether plaintiff was, in fact, oblivious. Elam v. Allbee, Mo.App., 432 S.W.2d 379, 381(3). Consequently, what constitutes obliviousness of a plaintiff and a position of immediate danger, varies according to the circumstances in each particular case. Brown v. Alton R. Co., 236 Mo.App. 26, 62(26), 151 S.W.2d 727, 742(26). Assuming defendant had seen plaintiff doing everything she said she did, what defendant would have seen was this: Plaintiff, after stopping at the intersection of University and Kings, turned left and traveled eastward along the right side of University some 600 feet. While traveling on University, plaintiff was "looking straight ahead, right and left" and not exceeding the "legal speed limit . . . 30 miles an hour." Certainly from the appearances of these movements, it would have been reasonable for defendant to assume that plaintiff was not oblivious but rather was carefully observing traffic and had her automobile under complete control. Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 256–257, 234 S.W.2d 540, 547; Smithers v. Barker, 341 Mo. 1017, 1026–1027, 111 S.W.2d 47, 52. Absent reasonable appearances of obliviousness, defendant's humanitarian duty and plaintiff's position of immediate danger reached no further beyond the direct path of defendant's moving vehicle than the distance within which plaintiff, by her own efforts, was unable to stop short of it. Yarrington v. Lininger, Mo., 327 S.W.2d 104, 110(10).

Albeit that appellate courts cannot judicially note the exact distance it takes a specific automobile to stop when driven at a specific speed on a dry concrete street [McCarthy v. Wulff, Mo., 452 S.W.2d 164, 168–169(9)], we are advised that it is a matter of such common knowledge as to be obvious, that an automobile going 30 miles an hour can be stopped in a distance of 200 feet [Alwood v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 868, 873(9)], or "within a much shorter distance than 100 feet" [Noland v. Pastor, 8 Cir., 191 F.2d 1009, 1013(3)], and that the sighting of an approaching vehicle 200 feet away traveling 30 miles per hour gives no appearance of apparent danger. Mahl v. Terrell, 342 Mo. 15, 20, 111 S.W.2d 160, 162. Therefore, if we completely ignore plaintiff's evidence which casts serious doubts upon there being any appreciable visibility across the southwest corner of the accident intersection and blindly accept the first sight-distance estimate of plaintiff's elderly witness, we must conclude that had defendant seen plaintiff when plaintiff was 200 feet west of the intersection, plaintiff was not then in a position of immediate danger and did not reach such a position until she was "within a much shorter distance than 100 feet" from the intersection. But none of this aids the plaintiff in divorcing the essential elements of her case from guesswork or conjecture. Although defendant had driven 15 to 20 miles an hour while crossing Sunshine, 300 feet south of the accident intersection, the evidence discloses that she commenced slowing from those estimated rates at some undisclosed distance south of the point of impact, and thereafter traveled at unknown and various rates of slowing speeds for unspecified distances until she arrived at the site of the accident. Such being the case, there is no direct or circumstantial evidence from which the jury, without speculating, could determine the location or speed of defendant's automobile when plaintiff was at any given point or the location and speed of defendant's vehicle at the moment plaintiff came into a position of discoverable immediate danger. Therefore, it is utterly impossible to determine from the evidence if defendant, in the exercise of the highest degree of care, could have seen the plaintiff when she actually arrived at a position of imminent, impending and immediate danger. "Absent this one fact, there are no niceties in calcula-

tions for the doctrine to operate and seize the facts when imminent peril arises." Pankey v. Claywell, Mo.App., 417 S.W.2d 9, 13(9); cf. Dillon v. Hogue, Mo.App., 381 S.W.2d 599, 602.

The mere fact an accident occurred thereby causing injury to plaintiff makes it self-evident that plaintiff was at some time in a position steeped with perilous possibilities. But such bare fact is not proof of the position of the parties relative to one another at any given time; neither does it establish plaintiff's prior position of immediate danger within the contemplation of the humanitarian doctrine nor permit determination of the time when and the place where the reasonable appearances of the situation were such as to impose upon defendant a duty to act. Conclusions on these elements would rest on nothing more than surmise, speculation and conjecture in view of the incomplete and meager factual showing made in the case at bar. Thus, for want of proof, plaintiff did not make a submissible case under the humanitarian doctrine and the trial court properly set aside the verdict and judgment for plaintiff and entered judgment for the defendant.

The judgment for defendant is affirmed.

STONE and HOGAN, JJ., concur.