Richard F. WILSON, Plaintiff-Appellant,

v.

MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a corporation, Defendant-Respondent.

No. 11107.

Missouri Court of Appeals, Southern District, Division One.

Jan. 29, 1980.

Edward J. Hershewe, The Law Offices of Robert W. Richart, Joplin, for plaintiff-appellant.

Laurence H. Flanigan, Flanigan & McCanse, Carthage, for defendant-respondent.

PREWITT, Judge.

Plaintiff received a favorable jury verdict in this personal injury action and the trial court entered a judgment in accordance with the verdict. Thereafter, pursuant to defendant's after-trial motions, the court set aside the judgment and entered a judgment in favor of defendant. The court further ordered that in the event the latter judgment be reversed, defendant's motion for new trial be sustained on the ground that the verdict was against the weight of the evidence and that plaintiff's submission instruction was erroneous.

Plaintiff was injured in Joplin, Missouri, during the early morning hours of September 19, 1970, after having consumed alcoholic beverages at several establishments in Joplin. He was wearing jeans and a short sleeve shirt, predominantly white in color. After the bars closed about 1:30 a. m., plaintiff left to go to his brother's home. He decided to take a "short cut" down or along defendant's spur track near Second and Winfield Street. At trial plaintiff testified he walked approximately 100 to 200 feet northwest of the intersection on the tracks, stumbled and fell, became sick and blacked out or went to sleep. This occurred at approximately 1:45 a. m. He did not hear or see a train before he fell asleep. Shortly after 2:25 a. m., a train crew delivered two boxcars southeast of where plaintiff fell. A locomotive pushing two cars passed over the track in the area where plaintiff fell. A conductor was at the top of the front boxcar with a lantern and two fusees (described as red flarelike lights). Plaintiff offered evidence that with these the conductor could see at least 30 to 35 feet in front. With the lantern he could have signaled the engineer within normal reaction time. The train traveled at 2 to 3 miles an hour. There was evidence that it could have been stopped in 2 to 6 feet with safety to the crew. After passing the area where plaintiff said he fell, the crew dropped off the boxcars and was returning by backing up the locomotive. They then saw plaintiff lying on the outside of the rail and stopped the engine before they reached him. His leg was severed and inside the rail.

Plaintiff submitted his case on the humanitarian doctrine. Under a humanitarian submission, the plaintiff must establish: (1) plaintiff was in a position of peril; (2) defendant had notice of the peril or if defendant had a duty of lookout, should have been aware of plaintiff's peril; (3) after defendant saw, or should have seen, plaintiff in a position of peril, defendant had the means to avert the injury without injury to himself or others; (4) defendant failed to exercise the requisite care to avert the injury; and (5) by reason thereof, the plaintiff was injured. *Banks v. Morris & Co.*, 302 Mo. 254, 257 S.W. 482, 484 (banc 1924); *Wiseman v. Missouri Pacific Railroad Company*, 575 S.W.2d 742, 745 (Mo.

App.1978). Defendant contends that plaintiff failed to make a submissible case because: (A) plaintiff's testimony was contradictory and so conflicting with his deposition that it lacked probative value and cannot be considered to determine if he made a case; (B) defendant did not have a duty to maintain a lookout for plaintiff as he was a trespasser and no public use such as he was making was shown in the evidence; and (C) even if plaintiff's trial testimony had probative force, it did not establish that he was in imminent peril at a time when defendant's employees could have avoided injuring him.

To determine if the plaintiff made a submissible case and if the court erred in setting aside the judgment and entering a judgment for defendant, we view the evidence and reasonable inferences most favorable to plaintiff. *Ogden v. Toth,* 542 S.W.2d 17, 19 (Mo.App.1976).

Before considering if the evidence shows the necessary humanitarian elements, we should decide if plaintiff's testimony at trial can be used in determining if plaintiff made a submissible case. It appears that if his testimony has no probative value, a humanitarian case is not made. Plaintiff's testimony at trial varied considerably from his deposition. When his deposition was taken in 1974, he stated he did not intend to walk down the spur track or right of way, but to stay on the street, and that he was walking when hit by the train. At the trial he testified that he walked down the track and was lying down unconscious when struck. Defendant contends that under such holdings as *Steele v. Kansas City Southern Ry. Co.,* 265 Mo. 97, 175 S.W. 177 (1915), and 302 Mo. 207, 257 S.W. 756 (banc 1924), that plaintiff's testimony is so contradictory and conflicting as to prevent it from having any probative value. We don't feel that *Steele* is controlling here. There one version was given by plaintiff and after an overnight recess, a different version without a reasonable explanation. Defendant contends that the situation here is the same as in the first *Steele* opinion because plaintiff incorporated his deposition testimony into the trial by saying it was true. He said his deposition testimony was true and then later appeared to have clarified his meaning by saying it was true at the time but not now, but that he wasn't lying. The jury could find that by his statement that it was true he meant that he was not lying at the time. He acknowledged that his trial testimony had changed. He claimed that his deposition version was due to a psychological reaction caused by his injury. This caused him not to want to talk about the incident and to attempt to block it out of his mind. Plaintiff said that he was so bothered by the accident and the pain that he couldn't cope with it until he was helped by a psychologist. Plaintiff and his psychologist testified that after receiving psychological help he was able to relate the true facts. The jury could have believed that due to this help he was now able to discuss the occurrence and truthfully tell how it happened. We believe it is for the jury to determine if he was telling the truth at trial. Contradictory testimony at trial, without other explanation, does not by itself make a prima facie submission, but a statement by a party prior to the trial, although admissible as impeachment, does not destroy the trial testimony as proof. *Welch v. Hyatt,* 578 S.W.2d 905, 913 (Mo. banc 1979). Contradictions between plaintiff's court testimony and his previous deposition are matters for the jury to assess. *Welch v. Hyatt,* supra, 578 S.W.2d at 913; *Atkinson v. Be-Mac Transport, Inc.,* (No. 40533, Mo.App. Eastern District 1980). Plaintiff's trial testimony, though inconsistent with his deposition, must be considered to determine if a submissible case was made.

We next consider if the defendant's employees had a duty of lookout for persons such as plaintiff on the tracks. If the duty exists, the evidence was sufficient to show that with the position of the trainmen and the lights available to them, plaintiff could have been seen, if he was on or near the track, when the train was 30 to 35 feet away. They did not see him until after the injury. A railroad track is private property and the trainmen have no duty of

lookout except at public crossings or at other places where there is actual or constructive knowledge of the habitual use of its tracks by the public. *Coonce v. Missouri Pacific Railroad Co.,* 358 S.W.2d 852, 854 (Mo.1962). A railroad's knowledge of public user is not generally established by direct evidence but inferred from other facts such as long acquiescence in the extensive use of its tracks as a footway. *Id.* There was evidence that this occurred in a populated residential area of Joplin, Missouri. There were no signs prohibiting the use of the tracks and right of way and no fences. The evidence showed a path along and up the tracks and that for many years it was frequently used as a shortcut both day and night.

■ Both parties cite numerous cases involving the duties of railway employees to look for persons on or near railroad tracks. It would be difficult to reconcile all of the language in the cases. However, they can be distinguished on their facts. So as to not unduly lengthen this opinion, we will not discuss many of the cases cited. Defendant contends that the statements in *Coonce v. Missouri Pacific Railroad Co.,* supra, saying that the defendant's use must be shown to be within the use proven, prevents plaintiff's recovery, as there was no evidence to establish the use of the tracks for lying down. It contends that there was no duty to lookout for or see someone lying down and that at the time of the injury plaintiff was outside the rails and not within the area used. In *Coonce,* the area was not populated, and the court felt that the evidence of user there did not place a duty upon defendant to keep a lookout to discover a man sitting on the tracks. The opinion noted, 358 S.W.2d at 858, that the rule of waiver of the right to expect a clear track has always been applied to areas where there is considerable population as in cities or towns. Here we have a spur track infrequently used by the railroad but frequently used by pedestrians. It is in a populated area with residences nearby. There is a duty on a railroad to notice that a person may be sitting or lying on a track in an area impressed by public user.

*Brooks v. Terminal Railroad Association,* 276 S.W.2d 600, 606 (Mo.App.1955). Nighttime does not change the duty to look; but if anything, it increases that duty. *Id.*

■ In a humanitarian case, where one is struck by a train, it makes little difference as far as defendant's duty is concerned whether the injured party is drunk or sober, walking or lying down in a drunken stupor. *Starks v. Lusk,* 194 Mo.App. 250, 187 S.W. 586, 589 (1916); opinion approved 280 Mo. 268, 216 S.W. 1119 (banc 1919). Several cases have held that trainmen have a duty to see someone lying down on the track. See *Murphy v. Wabash R. Co.,* 228 Mo. 56, 128 S.W. 481, 486 (1910). The court held in *Riggs v. Metropolitan St. Ry. Co.,* 216 Mo. 304, 115 S.W. 969, 975 (1908), that a duty of lookout was required where a person was drunk at night and lying with his leg over the rail. *Friemonth v. Kansas City, St. L. & C. R. Co.,* 180 S.W. 1063 (Mo.App.1915), states at page 1064:

"But, the track being one that was frequented by pedestrians, the engineer must expect that a person may be on the track and must keep a lookout for such person. Now, although the drunken man is lying on the track instead of walking thereon, yet, if he is in such position as to be observable to the engineer when exercising the ordinary care required of him to see persons walking on the track, and the sight of the object on the track is such as to put a reasonably prudent man in the engineer's situation on his guard and cause him to take precautions before it is too late, then the defendant is liable if the engineer fails to do this."

In *Cochran v. Thompson,* also relied on by defendant, 347 Mo. 649, 148 S.W.2d 532 (1941), the injury occurred in a fenced area in "open country". User where there is a considerable population is essentially different from a user in open sparsely settled country. *Counts v. Kansas City Southern Railway Company,* 340 S.W.2d 670, 674 (Mo. 1960). The evidence of public use here was similar to that in *Counts.* We believe that public user was sufficiently shown to call

upon defendant's employees to keep a lookout for persons along and on the track. In a populated area such as here, the trainman should expect persons along the tracks day and night in a variety of conditions.

We next decide if plaintiff was in a position of peril where he could have been seen by defendant's employees in sufficient time for them to have stopped the cars. Plaintiff testified that he thought he fell to the south and outside the rail. Whether he remained in the same position or in the same general area from the time he first became unconscious until injured is not conclusively established. At some time he was in peril, as his injury demonstrates. *Finch v. Kegevic,* 486 S.W.2d 515, 521 (Mo. App.1972). But this does not establish that he was in peril when the defendant had a duty to act. *Id.* Plaintiff indicated that he fell to the south and didn't recall being on the rail. Defendant's duty of lookout is not limited to just the tracks but should include the area near the tracks. A person might be in peril, even if not actually on the tracks because of unconsciousness and a possibility that he might roll or otherwise move on or toward the tracks. The defendant's employees are chargeable with notice of persons along the tracks that might be within the line of their vision while keeping a lookout. *Whiteaker v. Missouri Pac. R. Co.,* 15 S.W.2d 952, 955 (Mo.App.1929). Defendant contends that even if plaintiff was lying along the track, it is not possible to tell when his leg went over the rail and whether it was severed by the first wheel of the boxcar or the last wheel on the engine. Defendant's claim that *Hendrick v. Kurn,* 352 Mo. 848, 179 S.W.2d 717 (1944), is dispositive of the question of the peril being discoverable in time for defendant's employees to have avoided the injury. That case points out that humanitarian elements may be shown by circumstantial evidence. However, in *Hendrick* there was no evidence that the decedent ever fell or was unconscious near the track. The evidence did not show what happened to him between the time he left a bar and was found between the rails 2 hours and 20 minutes after the train had passed. Here we think

evidence that plaintiff fell near the rails, was found near the rails after the train passed, and that he was unconscious from the time he fell until he was discovered indicates that he did not move far, if at all. If he moved, he likely did not move outside of defendant's employees range of vision. If he had moved shortly before or as the train passed, it is more likely that he could have been seen. If he was conscious and moving, he could have heard the train, which he said he did not.

We believe that the jury was entitled to find that plaintiff fell, was unconscious, and was lying with his leg across the rail or so near the tracks as to be in a position of peril, where he could have been seen by defendant's employees from approximately 1:45 a. m. until the train passed about 2:25 a. m. We find this to be based on reasonable inferences from the testimony. The train crew had a duty of lookout for persons such as plaintiff. He could have been seen in peril 30 to 35 feet away. At 2 to 3 miles an hour, the train could have been stopped in 2 to 6 feet with safety to the crew. Humanitarian elements 2 and 3 are then satisfied. No action was taken to avoid the injury. Element 4 is met. Peril and injury, elements 1 and 5 were shown. Plaintiff made a submissible case under the humanitarian doctrine and the court erred in entering a judgment for defendant.

After setting aside the judgment in favor of plaintiff and entering judgment in favor of defendant, the court, pursuant to Rule 72.01(c), V.A.M.R., made a conditional ruling granting defendant's motion for new trial on the ground that the verdict was against the weight of the evidence and for instructional error. It is within the exclusive province of the trial court to determine if a verdict is against the weight of the evidence. *Strickner v. Brown,* 491 S.W.2d 253, 255 (Mo.1973). Trial courts have discretion to grant one new trial on the ground that the verdict is against the weight of the evidence where there is evidence to support a verdict for the party receiving the new trial. Rule

78.02, V.A.M.R.; *Ogden v. Toth,* 542 S.W.2d 17, 24 (Mo.App.1976). No doubt exists that under the evidence the jury could have found for defendant. The court's order granting a new trial as being against the weight of the evidence must be affirmed.

Defendant's motion for new trial alleged numerous errors in plaintiff's submission instruction. We do not know on what basis the trial court found it to be erroneous and as it may not arise upon a new trial, any comments we make regarding the instruction may be of no aid to the parties or to the trial court.

The judgment in favor of defendant is reversed. The order granting defendant's motion for new trial is affirmed and the cause remanded for that purpose.

TITUS, P. J., and GREENE, J., concur.

FLANIGAN, C. J., recused.