**Michael Shane CRIGER, by next friend Janice Criger, Plaintiff–Respondent,**

v.

**WEBSTER ELECTRIC COOPERATIVE, Defendant,**

**and**

**Porcelain Products Company, Defendant–Appellant.**

**No. 16047.**

Missouri Court of Appeals, Southern District, Division One.

Feb. 7, 1990.

James W. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for plaintiff-respondent.

Robert D. Lewis, Bacon and Lewis, Springfield, for defendant-appellant.

PREWITT, Judge.

Following jury trial plaintiff received a verdict against both defendants. Judgment was entered in accordance with the verdict and defendant Porcelain Products Company appeals.

The incident from which this matter arises occurred on July 16, 1985. At that time plaintiff-respondent was eleven years, two months old. He lived with his parents at Route 3, Rogersville, approximately twelve miles southwest of Marshfield. Respondent had gone to a field near where he lived to gather alfalfa to feed his rabbits. As he went into the alfalfa field he saw an electrical line owned by defendant Webster Electric Cooperative which had sagged low-

er than normal. It was later determined that the wire was 74 inches from the ground. Respondent walked under the line as he gathered the alfalfa. As he was walking back toward his house he came into contact with the line. After waking up on the ground several feet from the wire, he called for his father and started walking back toward the house. He met his father in the yard and was taken to the hospital. Eventually his right arm was amputated just below the elbow.

The parties agree that the line sagged because an insulator manufactured by appellant separated. Appellant contends that this occurred when the insulator was struck by lightning. Respondent offered evidence that the breaking of the insulator was due to a defect in its manufacture. Respondent submitted his claim against appellant based on strict liability in tort. See MAI 25.04.

Appellant presents three separate but related points relied on. Point I states that the trial court erred in not directing a verdict in appellant's favor because "all the credible evidence established that there was no defect in the insulator at the time it was manufactured and sold and that lightning was the cause of the insulator failure". In that point appellant contends that evidence submitted by respondent through the testimony of Earl Richards was insufficient to establish that there was a defect in the insulator at the time it was manufactured and left appellant's possession which caused it to separate.

Appellant asserts in Point II that the trial court erred in allowing Richards "to give his expert opinion and conclusion regarding the cause of the ceramic insulator failure because he was not sufficiently qualified to render any such opinion as an expert witness in that by his own admissions he was not an expert in ceramic stress failure analysis, or any type of stress failure analysis, nor did he have any expertise in ceramics."

Point III states that the court erred in submitting to the jury the theory that the insulator was defective because "the basis for witness Richards' opinion of a defect was based upon the length of the insulator being too long and there was no adequate basis for his opinion that the excessive length was present at the time the insulator was manufactured, as opposed to the excessive length being caused at the time the insulator broke."

Each of these points is premised on the contentions that Richards' testimony as to the cause of the insulator separating was improperly admitted. We therefore consider whether that testimony was properly admitted and if so, whether it gave the jury a basis to render a verdict against appellant.

The determination of the qualifications of an expert witness and the admissibility of opinion evidence is within the discretion of the trial court, not to be interfered with on appeal unless it plainly appears that there has been an abuse of that discretion. *Cheek v. Weiss*, 615 S.W.2d 453, 456 (Mo. App.1981). See also *Eichelberger v. Barnes Hospital*, 655 S.W.2d 699, 704 (Mo. App.1983).

In determining if respondent made a submissible case we consider the evidence and reasonable inferences therefrom most favorable to him. *Ogle v. Webb*, 623 S.W.2d 582, 583–584 (Mo.App.1981); *Wilson v. Missouri–Kansas–Texas Railroad Co.*, 595 S.W.2d 41, 44 (Mo.App.1980). An appellate court views the evidence and all inferences thereof in the light most favorable to the verdict and inconsistencies are resolved in favor of the prevailing party, and all of the other party's evidence is disregarded unless it aids the prevailing party. *Lauber v. Buck*, 615 S.W.2d 89, 91 (Mo.App.1981).

Richards is a professor in the Department of Electrical Engineering at the University of Missouri at Rolla. He has a Bachelor's Degree, a Master's Degree, and a Doctor's Degree in Electrical Engineering. At respondent's attorney's request he examined the broken insulator and intact insulators of the same type manufactured by appellant.

Following are copies of photographs which may aid in understanding the issues here.

Two insulators which appear
identical to the one
which separated.

Same two insulators with
photograph taken at
different angle.

Insulator which separated.
At top is the "metal bowl",
then "eye pin" and pieces of
"porcelain bell".

Photograph taken shortly after
occurrence. Portion of insulator
is shown on right side. Remainder
of insulator is on right side of
pole between cross arms.

The insulator consists of three basic components. Its base is a metal bowl like structure. Into it is inserted a porcelain "bell". Then a metal "eye pin" is inserted into a "seat" in the center of the base and bell. The eye pin and the cup are "forged aluminum". The porcelain bell is set in with "neat portland cement" and then the eye pin inserted is also secured by portland cement. The "eye pin" pulled out, leaving the "seat" and the base of the "porcelain bell" together. The following drawing was described by appellant's president as a "cutaway" of the insulator. The "cutaway" actually is only on the right side.

Appellant's president testified that from the center of the hole in the eye pin to the center of the hole below the base the dimension sought was 6.23 inches. He said there was an acceptable tolerance of an eighth of an inch plus or minus which gave a total tolerance of "a quarter of an inch". Dr. Richards testified that his measurements from the center of the two holes were "about" three eighths longer than appellant's design specifications.

Dr. Richards determined that the extra length occurred because the "seat" in the bell was not deep enough and thus the eye pin was not inserted far enough into the base. He said that over the four year period it was on the line it gradually wore away and came loose. The top of the base is turned inward at an angle which Richards described at approximately twenty degrees. He said that the angle on it and the angle at the bottom of the eye pin are "almost the same". After the cement between these surfaces is cured it will "compress all that material and that's the principle by which the pin and the insulator and the cup are all anchored together." The drawing has lines showing how this force should be applied between the angles. By not having the pin inserted far enough Richards said the proper relationship or angle was not created between the angle on the bowl and the angle on the bottom of

the eye pin and it caused a weakening in the insulator.

Richards testified that in analyzing the insulator it was not necessary to know anything about ceramics. He said that the principles of physics have to be applied to reveal the defect in the insulator. He testified that he had academic training and experience with those principles. His knowledge in that area is not questioned.

Appellant contends that Richards' testimony that the seat was not deep enough "is no more than an unproven assumption on his part since he has no idea whether the porcelain seat pulled away from the bottom of the metal base at the time the insulator broke."

Richards testified that if the insulator was assembled correctly then there "shouldn't have been any movement" of the seat. He said that the seat appeared to be "pretty tight in there" and he could not move it. There were "ribs" placed in the insulator to stop such movement and he doubted that the movement of the seat could have occurred. Richards said he did not think that the material in the seat ever was pressed far enough down which prevented the pin from being sufficiently inserted. He concluded "that this insulator did not meet specifications and that it was not seated fully within the cup". He said he was of the opinion that this condition existed when the insulator left appellant. Based on this the jury could have concluded that the porcelain seat did not move when the insulator separated.

■ The only reason advanced for Richards not being sufficiently qualified as an expert is that he had no expertise in ceramics. He testified that was not necessary in order to make the determination that he made. There was no testimony by him or by anyone else that there was any ceramic failure. Richards' theory was that the eye pin was not sufficiently inserted and to make that determination knowledge of ceramics was not necessarily required. The trial court did not abuse its discretion in allowing him to testify.

■ A jury could have concluded that lightning caused the insulator to break as was appellant's theory. However, as the trier of fact, it also could have believed, and apparently did believe, Richards' testimony that the cause was appellant's failure to have the eye pin inserted far enough into the seat in the metal bowl. This was a determination for the trier of fact and we can not say as a matter of law that there was not a sufficient basis for the jury's finding.

The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.